The Chicago and Northwestern Railroad Co.

*v.*

The Northern Line Packet Co.

1. Notice—*of pendency of suit, when conclusive and to what extent.* If one carrier is sued for the loss of goods, and notifies a second carrier, to whom he delivered the same for transportation, of the pendency of the suit, and requires him to defend, the judgment against the first is not conclusive as to the question of the liability of the second. It is only conclusive on such privies as are liable over, and then only as to the fact that the judgment was recovered, and that it was for the value of the goods lost; but the judgment is not so far conclusive of the question of privity, as to fix the liability of the person served with notice.

2. Judgment—*binding effect as to privies.* A person holding a covenant running with the land, when sued for the title or upon his covenant, may give notice to a prior grantor, in the chain of title, to sustain the same, and on his failure to do so, the judgment may be read in evidence, against him, to show the recovery, and the amount the last covenantor had to pay; but the remote covenantor may show that the recovery was not a breach of his covenant, and his undertaking or liability must be shown otherwise than by the judgment

3. CARRIER—*liability to first carrier for loss of goods.* If a carrier undertakes to transport goods to a given point, and, at the end of its line, delivers the same to a packet company, who agrees to deliver the same at a certain point to a railway company, which it does, and the goods are lost by the fault of the latter company, and the first carrier is compelled to pay for the goods, it can not recover over of the packet company, which has performed its contract, but must look to the railway company to whom they were last delivered.

4. SAME—*when bill of lading is binding as a contract.* Where a carrier delivers goods to a forwarder, who is its agent and the agent of the company to whom the same are delivered, and he gives a bill of lading limiting the duty of the latter to deliver the goods to another company, this will make the bill of lading a contract, binding upon the first and second carriers, and the second carrier will not be responsible for the delivery of the goods to the consignee by the last carrier.

5. SAME—*liability when he ships over intermediate lines.* If goods are lost by one carrier, in a line of carriers composed of several, the first to whom the goods are delivered, and who agreed to transport them to their destination, will be liable to the owner, and the latter will not be required to sue the carrier who lost the same, but this rule applies only in favor of the owner of the goods. The first carrier, if he sues to recover what he has paid, must sue the carrier in default.

APPEAL from the Circuit Court of Whiteside county; the Hon. WILLIAM W. HEATON, Judge, presiding.

Mr. A. M. HERRINGTON, and Mr. B. C. COOK, for the appellant.

Mr. WILLIAM E. LEFFINGWELL, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In the month of October, 1866, Emanuel Sohn delivered to appellant, and took a receipt therefor, three boxes, one cask, two barrels, and one chest, or bureau, containing household goods, consigned to himself, at Lee Summit Station, Jackson county, Missouri. The goods were all received but the chest and its contents, which never came to hand. He commenced suit against appellant, and it, on the 27th of November, 1871, served a notice of the pendency of the suit, and its nature, and to appear and defend, on the agent of

appellee.   A trial was had at the May term, 1872, resulting in a judgment in favor of Sohn, for $1128.   Appellant afterwards compromised, and paid $750 to him, in satisfaction of the judgment.   Thereupon, appellant brought this suit, and, on a trial in the court below, a judgment was rendered for defendant.   To reverse that judgment, the case is brought to this court, and various errors are assigned.

The proof shows that the chest and other goods were received by appellee, and duly transported by their line of boats from Fulton, in this State, to Hannibal, in the State of Missouri, and there delivered to the Hannibal and St. Jo. Railroad Company; that the goods, to reach their destination, had to pass over that road, and that it connected with appellee's line of boats, at Hannibal, and that was the proper point to deliver the goods, to reach their destination, and that appellee was in no default in carrying and delivering the goods to the agents of the railroad.

It further appears that the chest was received, and remained in the warehouse of the railroad company until in the spring of 1869.   The agent testifies that he saw the chest in the department of unclaimed freight, in 1867, and that it was opened and the contents sold at auction, in the spring of 1869, for about $80.   The auctioneer testified that there were letters in the trunk, directed to Emanuel Sohn.

The receipt given by appellee, when the goods were delivered to it, states that they were to be delivered, without delay, at the port of Hannibal, to the Hannibal and St. Jo. Railroad or assigns, he or they paying freight.   The receipt was given to W. C. Snyder, as agent and forwarder.   From the evidence, it is clear that appellee received the goods from appellant, and it also appears that appellee delivered them to the Hannibal and St. Jo. Railroad, which was a part of the line over which the goods were to be transported.   These facts we shall consider as proved.

The first question presented for our consideration, is, whether the notice served on Snyder of the pendency of the

suit by Sohn, against appellant, concluded appellee from showing that it had fully performed its contract, and had never incurred any liability.   It is denied that the notice to Snyder was notice to appellee; but we shall not stop to determine that question, but treat it as notice to appellee.   Then, what was the effect of the notice?   If appellee is privy, then it concludes it from denying that the goods were lost, that the judgment was recovered against appellant, and that it was for the value of the goods lost; but it is believed that no case can be found which holds that such a notice is so far conclusive of the question of such privity as to render the person served with notice liable.   It is only conclusive on such privies as are liable over, and then only to the extent we have just indicated.

Whether such a relation exists as to make the notice an estoppel, to that extent, is an open question that may always be contested; but when it is shown that the relation does exist, and that a recovery over may be had against the person on whom the notice was served, then he is estopped to deny that the judgment was recovered against his privy, that the wrong was perpetrated, or that the recovery was too large.   In such a case, the judgment may be read in evidence to show that there had been a recovery against the person first sued, and the amount he has been compelled to pay, as fixing the measure of damages, but the judgment is evidence for no other purpose.   Whether appellee was liable over to appellant, was not in issue in the first suit, and it would be manifestly unjust to conclude it on that question without being heard.   It would violate the principle, that all persons must be afforded the opportunity of being heard before they can be deprived of life, liberty or property.   This is fundamental and axiomatic, and must be regarded in all legal proceedings.

The application of the rule to such notices is illustrated in cases of covenants running with lands.   A person holding such a covenant, being sued for the land or on his covenant,

may give notice to a prior grantor, in the chain of title, to sustain the title, and on failure to do so, the judgment may be read in evidence, against him, to show that the last covenantor had been sued, a judgment recovered against him, and that his covenant had not been performed, and the amount he had been compelled to pay; and, in such a suit, the plaintiff would not be required to prove the title under which the eviction was had, except that it was not a title derived from himself. Rawle on Cov. for Title, 209.*

The remote covenantor, it will be observed, is still at liberty to show that the recovery was not a breach of his covenant for title, that his covenant was special, or that it did not run with the land, or that he made no covenant. His undertaking must be shown otherwise than by the record of the judgment, and he may contest that question as though he had not received a notice to appear and defend.

If these views are correct, and we do not doubt them, it then follows that appellant was bound to show, independent of the record of the judgment, that appellee, by its contract, had become liable for the acts of the transportation lines beyond it, or had lost or misappropriated the goods.

Without reference to what the liability of appellee would have been had its contract not been in writing, the terms of the contract contained in the bill of lading are clear and explicit. It agrees that it will carry the goods, without delay, from Fulton to Hannibal, and deliver them to the Hannibal and St. Jo. Railroad or assignees, he or they paying freight for the goods; and there is no pretense that appellee did not comply with the terms of this agreement; nor is it claimed that appellee has come short of performing its entire duty in transporting these goods; nor is there any dispute that the Hannibal and St. Jo. Railroad was the party who.detained and appropriated the goods as unclaimed freight. If appellee is liable, it is upon other grounds than those embraced in the contract, or from its breach:

See also, *Sisk* v. *Woodruff*, 15 Ill. 15.

It is, however, urged that the bill of lading was not given to appellant; that it was not a party to it, and was not bound by it; that it had a right to insist that there was no express agreement, and it had a right to insist upon an implied agreement, which includes a guaranty that the goods should reach their destination. The contract was made with Snyder, as agent and forwarder, and he is so named in the bill of lading; and he testified that he was agent and forwarder for both companies. This evidence, we think, is entirely sufficient to make the contract in the bill of lading the contract of the parties to this suit, executed by and to their several agents, and executed under such circumstances as to bind them to its provisions. Such is the effect of the evidence.

But the question arises whether appellee, by force of the duty devolving on it as a common carrier, became liable for the neglect of duty by the other carriers into whose hands the goods would go after leaving its possession, notwithstanding its agreement contained in the bill of lading. In the case of *Illinois Cent. R. R. Co.* v. *Frankenberg*, 54 Ill. 88, it was said, that, in adopting a rule, where goods are lost by one carrier, in a line of carriers composed of several, it was more just to hold the carrier to whom the goods are delivered by the consignor, liable, than to require him to spend time and money in searching for the carrier who produced the loss, and to bring suit for the injury in a distant State; that the intermediate roads should be considered the agents of the road first receiving the goods, as they have facilities not possessed by a consignor of tracing out the losses of property thus shipped, and that all have, or can have, running connections with each other, and the company first receiving the goods should be liable to the consignor. It is not intimated, in that case, that the owner or consignor may sue and recover of any carrier through whose hands the goods would have to pass, but the carrier first receiving them, or the carrier who has neglected its duty. On the other hand, there is a strong implication that the consignor must sue either the first carrier or the car-

rier committing the wrong; and we are not willing to carry the rule beyond that extent, and must confine it within that limit.

If the remote carriers are the agents, or are to be considered as such, of the carrier first receiving the property for transportation, and the goods are lost or damaged by another in the line, the first carrier having been compelled to adjust the loss, if he sues to recover it back, he must proceed against the carrier who has occasioned the loss. He has, or can have, the means of readily finding where it occurred; nor can a person, as a general rule, sue any agent of his but the person who has omitted the duty or perpetrated the wrong. He has no election to sue an agent who has performed his entire duty, and leave him to sue another agent who is guilty of a failure to perform his duty, and has produced the injury to the principal. From these considerations, it follows that appellee is not liable for the loss.

This view of the case renders it unnecessary to consider the other questions raised on the record, and the judgment of the court below is affirmed.

*Judgment affirmed.*

