(No. 34093.—

WILLIAM KARAS, Appellee, *vs.* JOHN SNELL, *et al.*—(THE CITY OF CHICAGO, Appellant.)

*Opinion filed March 20, 1957—Rehearing denied May 20, 1957.*

234

BRISTOW, J., dissenting.

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and HARRY H. POLLACK, of counsel,) for appellant.

MATTHEW STEINBERG, WILLIAM C. WINES, and BERNARD J. McDONNELL, all of Chicago, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case poses questions concerning the validity of section 1—15 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1955, chap. 24, par. 1—15) and the nature and extent of the liability thereunder. Section 1—15 applies only to the city of Chicago and provides in essence that in case of any injury to person or property caused by a member of the police department while engaged in the performance of his duties as a policeman, and without the contributory negligence of the injured person, the city shall indemnify the policeman for any judgment recovered against him as the result of such injury, except where the

injury results from wilful misconduct of the policeman.

The plaintiff, William Karas, obtained a judgment against the defendant John Snell, and brought an action against the defendants, Snell and the city of Chicago, seeking a declaratory judgment that Snell had a right to be indemnified by the city in the sum of $169,900 with interest for the judgment which he obtained against Snell, and that the plaintiff had the right to recover said sum to satisfy the judgment. Snell filed a counterclaim in the declaratory judgment proceeding seeking indemnity from the city. On January 27, 1956, a summary judgment was entered on the pleadings and supporting affidavits declaring that the city of Chicago was liable to Snell for the use and benefit of the plaintiff, Karas, in the sum of $169,900. On February 24, 1956, a judgment was entered declaring that the city of Chicago had failed to pay the amount declared due and that Snell should have and recover from the city of Chicago for the use and benefit of the plaintiff, the sum of $194,529.62. The city appealed from both judgments.

The city, in its pleadings in the trial court, and upon this appeal questions the constitutional validity of section 1—15. The constitutional question presented is fairly debatable, and it is directly appealable to this court under section 75 of the Civil Practice Act. (*Village of Lansing v. Hacker,* 7 Ill.2d 258; *Gaca v. City of Chicago,* 411 Ill. 146; *Mandrake v. Schlaeger,* 393 Ill. 610.) It is established that a decision sustaining the constitutionality of a statute is not decisive of its validity against subsequent attacks upon different grounds, where the court has not heretofore considered and passed upon the specific constitutional questions presented. (*Grasse v. Dealer's Transport Co.* 412 Ill. 179.) This case also involves the construction of section 22 of article IV, and section 10 of article IX of the constitution. The city contends that these sections prohibit Karas from maintaining this suit, and thereby a

further basis for direct appeal to this court is established under section 75 of the Civil Practice Act. *222 East Chestnut St. Corp.* v. *Berger,* 3 Ill.2d 32; *Atkins* v. *Atkins,* 386 Ill. 345.

On December 1, 1950, Snell, while employed as a police officer of the city of Chicago, entered the Seven Seas Restaurant, an eating place and tavern in the city of Chigao, shot Karas in the head and permanently blinded him. Thereafter on July 18, 1951, Karas filed a suit in the circuit court of Cook County against Snell and the owners and operators of the Cadillac Lounge and the Streamliner Grill. Count I stated a cause of action under the Liquor Control Act and alleged that the injury to Karas proximately resulted from the intoxication of Snell. Count II of the complaint was against Snell alone, and alleged in paragraph 1 that Snell, as a direct and proximate result of an intoxicated condition did assault Karas with force and arms without any provocation. Paragraph 4 also charged intoxication resulting in the negligent discharge of the pistol. Paragraphs 2 and 3 charged the mere negligent discharge of the pistol. Count I, the dramshop count, was dismissed as to Snell and later settled and dismissed as to the other defendants. At the close of all the evidence, the record discloses that paragraphs 1 and 4 of count II, the only paragraphs charging intoxication or wilful wanton misconduct, were stricken on motion of Snell, without objection by Karas. On February 26, 1953, the jury in that case returned a verdict based on the negligence charges of the complaint, in favor of Karas and against Snell in the sum of $169,900.

Thereafter, on March 18, 1954, Karas filed his verified complaint for declaratory judgment, the case now before us. This complaint set forth the foregoing facts and further alleged that the cause of action there stated arose on December 1, 1950, in the city of Chicago when Snell was a police officer engaged in the performance of his duties

as a policeman and while arresting or attempting to arrest Karas for a supposed offense against the laws of the State of Illinois or the ordinances of the city of Chicago; that Snell negligently, and without any contributory negligence on the part of Karas, did discharge his pistol, the bullet from which wounded and permanently and totally blinded Karas; that Snell notified the city and its corporation counsel of the pendency of the suit and demanded that the city appear and defend him; that the city had actual knowledge, full notice and ample opportunity to prepare and present any defense that Snell might have had, but nevertheless it did not appear or offer to defend Snell. The complaint further alleged the trial, verdict and judgment, and alleged the service of a writ of execution and the return of no property found; that Snell paid $50 to Karas in satisfaction *pro tanto* of the judgment against him and that such payment has been so applied by Karas. The complaint then sets forth the alleged accrued right of Snell to be indemnified for and on account of< the judgment, and prays for a declaratory judgment, in the alternative, that Snell now has vested an absolute right of indemnity from the city in the sum of $169,900 with interest thereon, and that Karas is entitled to recover that sum for the account of Snell, or that the payment by Snell of $50 to Karas vested in Snell the right to recover the sum of $50 from the city by way of indemnity; and that Karas is entitled to enforce said claim of Snell, and, in order to avoid circuity of action, Karas is now entitled to recover from the city the full sum of $169,900 with interest thereon.

The city of Chicago filed a motion to dismiss, alleging that neither Karas nor Snell had any right to the relief prayed for; and under section 1—15 there was no liability on the part of the city to indemnify Karas because the injuries complained of were caused by the wilful misconduct of Snell; that the complaint fails to show that the injuries were not due to Snell's wilful misconduct; that

there is no liability on the city to indemnify Snell until after he has paid the judgment; that section 1—15 does not give Karas a cause of action against the city; that if section 1—15 creates a direct liability on the city to Karas, it is unconstitutional as being in contravention of sections 22 and 34 of article IV, section 10 of article IX of the Illinois constitution, and the fourteenth amendment of the United States constitution.

Snell filed an answer to the complaint in which he admitted that Karas recovered a judgment against him as alleged; that he was acting as a policeman of the city of Chicago when he arrested Karas; that he shot and injured Karas in attempting to arrest him, and that judgment was recovered against him and in favor of Karas based on such injuries; that he was not guilty of wilful and wanton misconduct; that he paid the plaintiff $50 on said judgment; and that an execution against him was returned no part satisfied.

Snell also filed a counterclaim against the city for the use of Karas, alleging the entry of judgment against him; that the judgment was for injuries inflicted on Karas by him while acting as a policeman, and while attempting to arrest Karas; that he was not guilty of wilful and wanton conduct; that under section 1—15 the city must pay the judgment against him even though he has not paid it; that the city had knowledge of the suit against him and although requested to defend him, had refused to do so; and that said judgment is conclusive against the city.

The city's motion to dismiss was denied and thereafter the city filed a verified answer to the complaint alleging that the original action of Karas against Snell stated a cause of action under the Liquor Control Act and charged Snell with wilful and wanton acts while intoxicated; that Snell was not on duty as a policeman at the time he injured Karas; that it was notified of the pendency of said action but that it refused to defend Snell because at the time Snell

injured Karas he was not on duty as a policeman and in the complaint Snell was charged with wilful misconduct; that under section 1—15, the city is not liable for the wilful misconduct of a policeman even on duty; that under section 1—15, Karas is not entitled to enforce any claim of Snell against the city; that the complaint fails to show that the injuries inflicted on Karas by Snell were not wilful; that under section 1—15, no rights accrue to Snell until he has paid the judgment; that the city is not an insurer of Snell and is required to indemnify him only after he has paid the judgment; that Karas is not entitled to a declaratory or any other judgment against the city; and that this case involves the validity of section 1—15.

The city filed an answer to Snell's amended counterclaim setting up essentially the same defenses as contained in the answer to the complaint. Further answering, the city alleged that it refused to appear and defend Snell in said cause for the reason that its investigation disclosed that the injury to Karas resulted from the wilful misconduct of Snell, not performed by him while engaged in the performance of his duties as a policeman; that the interest of the city was directly contrary and adverse to the interest of Snell in such a proceeding; and that the primary duty of the corporation counsel is to represent the interest of the city. The city again set up its constitutional objections to the cause of action.

Snell filed a reply and a motion for summary judgment, in which he affirmatively set forth that Rule 373 of the Rules and Regulations of the Police Department of the city of Chicago provides that "a member of the department, for disciplinary purposes, shall be considered as being on duty at all times. Although certain hours are allocated to a respective member for the performance of duty on ordinary occasions, yet he is required to respond immediately day or night in any emergency, on notice that his services are needed"; that at the time Snell was per-

forming his duty as a policeman; that Snell was charged before the Civil Service Commission for dereliction of duty in his attempt to arrest Karas and the attendant injury to him; that the commission held a hearing on the charges and found Snell not guilty; that the finding of the commission is conclusive against the city that Snell was not guilty of wilful and wanton misconduct.

Snell's motion for summary judgment on his counterclaim was supported by his affidavit alleging that on December 1, 1950, he was a Chicago policeman, and was then attempting to arrest Karas for disorderly conduct; that Karas's injuries were received because of said attempted arrest. Attached to the affidavit were records from the Civil Service Commission showing that the charges and specifications against Snell for the assault on Karas with a deadly weapon were heard, taken under advisement, and that the commission issued a finding and decision that the evidence was insufficient to warrant a finding that the respondent was guilty.

In opposition to the motion for summary judgment the city filed the affidavit of an assistant corporation counsel setting up the defenses that Snell was guilty of wilful misconduct and was not on duty at the time he inflicted the injuries on Karas and therefore the city of Chicago was exempt from any liability, obligation or duty to indemnify Snell, regardless of the fact that Snell has allegedly paid the sum of $50 on the judgment; that the plaintiff in the original dramshop suit received the sum of $38,000 from the dramshop defendants for a covenant not to sue; and that no part of this amount was credited on the judgment. This affidavit also had attached thereto, and as a part thereof, the certified report of proceedings of the original suit by Karas against Snell, which report was summarized in the affidavit.

On this record the circuit court of Cook County held that the city of Chicago was precluded and foreclosed, by

the findings of the Civil Service Commission and by its failure to defend Snell upon notice, from denying that Snell inflicted the injuries above mentioned upon Karas in the negligent, but not wilful, exercise of his authority as a police officer of the city of Chicago; that the city is liable to indemnify Snell, for the use and benefit of Karas, for and in the sum of $169,900, together with interest; and that Karas is entitled to enforce the said judgment for his use and benefit. It is from this judgment that the city appeals.

The theory of the defendant city of Chicago is that (1) the entry of the judgment violates the constitutional proscription against any special or local law granting a special privilege (section 22 of article IV of the constitution), and against the imposition of taxes upon municipal corporations for corporate purposes (section 10 of article IX of the constitution); (2) that the trial court's denial of a trial on the merits was a deprivation of due process; (3) that section 1—15 does not give Karas a direct cause of action against the city; (4) that the liability of the city under section 1—15 was merely to indemnify Snell after the payment of a judgment; (5) that neither the finding of the Civil Service Commission nor the judgment in the original injury suit precluded the city from defending against the claim of Snell or Karas for indemnity on the grounds that Snell was not engaged in the performance of his duties as a police officer when the injuries were inflicted and that Snell was guilty of wilful misconduct; and (6) that the trial court should have held, from the pleadings, affidavits and matters in the record, that the city was not liable.

Karas, as plaintiff, and Snell, as defendant and counter-claimant, have filed a joint brief and argument, and contend that the indemnity afforded a policeman is in the nature of public liability insurance and is constitutional as additional wage benefits; that the city, having failed to defend, was

bound by the jury verdict; that the decision of the Civil Service Commission, the affidavit of Snell, and the rule that a policeman is always on duty, are conclusive of the fact that Snell was acting as a policeman when he injured Karas; that since Snell was acting as a police officer, and since the city had notice of and opportunity to defend the action, it was bound by the judgment in the first Karas case that Snell's misconduct was negligent and not wilful or wanton.

We must determine at the outset whether section 1—15, insofar as it creates a right in Karas to receive the benefit of the indemnity, is special legislation prohibited by section 22 of article IV of the constitution. We heretofore determined, in *Gaca* v. *City of Chicago,* 411 Ill. 146, that this statute validly classified cities on the basis of population in providing certain indemnity for police officers in cities of over 500,000 population. We there held that the legislation relieved the policemen in the city of Chicago from being restrained in performing their duty by fear that they might be called upon to pay a substantial judgment and relieved them from the burden of carrying public liability insurance. One judgment here appealed from was based on the counterclaim of Snell and was in his favor for the use of Karas. The fact that Karas, upon payment of the judgment, would receive a vicarious benefit as a creditor of Snell does not vitiate the statute. *Krebs* v. *Board of Trustees,* 410 Ill. 435, 443-444.

In *Gaca* v. *City of Chicago,* 411 Ill. 146, we likewise held that this legislation was of benefit to the people of the State generally because of their vital interest in law enforcement in the city of Chicago, and we rejected the contention that the statute imposed a tax for local corporate purposes in violation of section 10 of article IX of the constitution. (*Littell* v. *City of Peoria,* 374 Ill. 344; *People ex rel. Moshier* v. *City of Springfield,* 370 Ill. 541.) The *Gaca case* is determinative of these two objections,

even in their present setting. We find that section 34 of article IV of the constitution has no application in our consideration of the constitutionality of section 1—15; and that section 1—15 is not violative of the provisions of the fourteenth amendment of the Federal constitution.

We turn next to the application of the statute to the facts and procedure in this case. On July 9, 1943, section 1—15 first went into effect. At that time it provided for direct responsibility on the part of the city of Chicago, "In case any injury to the person or property of another is caused by the negligent operation of a motor vehicle by a member of the police department * * * while the member is engaged in the performance of his duties as policeman, * * *." (Ill. Rev. Stat. 1943, chap. 24, par. 1—15.) This was essentially the same as the present provision relating to municipal firemen driving motor vehicles while on duty. Ill. Rev. Stat. 1955, chap. 24, par. 1—13.

In 1945, section 1—15 was amended to its present form and the city of Chicago's direct liability for negligent operation of a motor vehicle by a member of the police department in line of duty was changed to that of indemnitor for all acts of the policeman under certain conditions. This statute provided: "In case any injury to the person or property of another is caused by a member of the police department of a municipality having a population of 500,000 or over, while the member is engaged in the performance of his duties as policeman, and without the contributory negligence of the injured person * * * the municipality in whose behalf the member of the municipal police department is performing his duties as policeman shall indemnify the policeman for any judgment recovered against him as the result of such injury, except where the injury results from wilful misconduct of the policeman."

This amendment altered the liability of the city in two respects. The nature thereof was changed from direct to indemnifying liability; the scope was broadened from the

area of motor vehicle cases to all cases of negligent injury caused by a policeman in the line of his duties. From a reading of the present statute it is clear that before the duty of the municipality to indemnify arises, at least three things must concur: (1) there must be an injury caused by a policeman; (2) the policeman must have been engaged in the performance of his duties as a policeman when the injury was inflicted; and (3) the injury must not have resulted from the wilful misconduct of the policeman.

We see no ambiguity in these conditions. If the statute made the city directly liable, as before, these three factual questions would have to be determined from the evidence in any suit brought against the city. However, since the statute has been drafted in terms of indemnity, and is silent as to the manner of determining the existence of the factual conditions, certain problems of construction arise.

We believe that clarity will be best served by first considering the conclusiveness of the first litigation between Karas and Snell. In the first Karas action against Snell the theory of liability was threefold: under the Liquor Control Act, for wilful misconduct, and for negligence. In its first two aspects the city would have been under no obligation to indemnify Snell; in the third the duty to indemnify could arise. When the city was given notice of the suit, the pleadings predicated liability on all three grounds. It does not appear that the city was given any notice that the dramshop and wilful wanton aspects of the litigation were to be withdrawn from consideration. The judgment ultimately entered for Karas against Snell was on allegations of negligence. The question then arises as to what was determined in that suit which concludes the city in the present litigation. The rule is well stated in 30 Am. Jur. 973, Judgments, sec. 243: "The conclusiveness of a judgment as against a person liable over to the judgment debtor extends to facts established in the first action. The judgment is conclusive proof in the second

action that the judgment creditor had a cause of action, that he was not guilty of contributory negligence, that there were no other defenses to the action, that he suffered damage to the amount of the judgment, and, in general, that the defendant in the first action was liable to the plaintiff therein. On the other hand, it is clear that the judgment in the prior action is not conclusive as to all matters necessary to be proved in the action against the third person. *The estoppel created by the first judgment may not be extended beyond the issues necessarily determined by it. Where it does not appear that evidence showing the liability of the third person was necessarily involved in the determination of the original action and passed upon by the court in rendering judgment, such judgment is not conclusive as to the liability of the defendant in the second action to the defendant in the first action; it is not conclusive as to the issue whether the relation or obligation exists which gives a remedy over, or whether the injury was caused by a wrongful act for which the defendant in the second action is primarily liable."* (Emphasis supplied.) We believe that *Sanitary District of Chicago* v. *United States Fidelity and Guaranty Co.* 392 Ill. 602, relied upon by Karas and Snell, is in accord with this statement of the rule.

A judgment in a prior action is not conclusive on matters which were withdrawn from litigation and were not required to be presented as a part of the case. This principle of law is stated in 50 C.J.S., Judgment, sec. 729, p. 217: "A point or question is not concluded by a judgment if it was withheld, or although originally involved in the action or placed in issue therein, if it was withdrawn, abandoned, stricken out on motion, or ruled out by the court, and, therefore, constituted no part of the verdict or final judgment in the case."

In *Schmisseur* v. *Rebhan,* 294 Ill. App. 172, at 175, the court held: "It is the undoubted law of this State that where issues have been determined by a competent tribunal,

or were such that they might have been presented and adjudged upon in such proceding, they become *res adjudicata* and cannot be considered and passed upon in a subsequent action. (*Webb* v. *Gilbert,* 357 Ill. 340; *Phelps* v. *City of Chicago,* 331 Ill. 80.) It is further the rule that a judgment or decree is not a bar to the further prosecution of claims, or the interposition of defenses, where the same, although asserted or set up in the prior suit, were withdrawn from the consideration of the court or for any reason, such as by agreement of the parties, were not submitted for decision; as held in *Palmer* v. *Sanger,* 143 Ill. 34; *Levy* v. *Solomon,* 207 Pa. 478, 56 Atl. 1007; *Finnegan* v. *Campbell,* 74 Iowa 158, 37 N.W. 127; *Cockerill* v. *Stafford,* 102 Mo. 57, 14 S.W. 813; *Troxell* v. *Delaware, L. & W. R. Co.,* 227 U.S. 434, 57 L. ed. 586."

The procedure by which the defendant gives notice of the pendency of an action and an opportunity to defend to one alleged to be liable over to him has been described by the expression "vouching in." This procedure was early recognized in Illinois, together with the logical limitation on the rule that the prior case is conclusive only of matters *necessarily* included in the adjudication, and is not conclusive on the question of whether the person served with notice is in such relation to the defendant as to be bound. (*Chicago and Northwestern Railroad Co.* v. *Northern Line Packet Co.* 70 Ill. 217; *Todd* v. *Chicago,* 18 Ill. App. 565.) A logical statement of the purpose of the rule is contained in *Southern Railway Co.* v. *Acme Fast Freight, Inc.* 193 Ga. 598, 19 S.E.2d 286, at pages 287 and 288, where the court said: "The underlying purpose of the rule which permits the vouching of another into court to defend a suit, where the defendant claims that the vouchee would in turn be responsible to him for any recovery had, is to conclude the vouchee upon the question of the voucher's liability to the original plaintiff and the amount of such liability; thus leaving for future determination only the one other ques-

tion as to whether or not the vouchee is in fact liable over to the vouching defendant. * * * The burden is still on the voucher to establish by aliunde proof his remedy over against the vouchee, in order to avail himself of the vouchee's inability to deny that the voucher was liable as adjudged in the original suit."

In most cases the interest of the voucher defendant and the vouchee are identical and there may be no questions concerning the subsequent liability of the vouchee. This circumstance is illustrated in *Drennan* v. *Bunn*, 124 Ill. 175, where we held: "Where one party is liable to indemnify another against a particular loss, it is because, by law or by contract, the primary liability for such loss is upon the party indemnifying, and in such instances the party bound to indemnify is in privity with the party to be indemnified, and he therefore has a direct interest in defeating any suit whereby there may be a recovery as to the subject matter of the indemnity, against the party to be indemnified. The party to be indemnified, moreover, is manifestly, directly interested in having him defeat all recovery in such suit, and so their respective interests and duties in respect of such suit must be the same." However, the logic of the rule that the prior case is conclusive only of matters necessarily included in the adjudication is most apparent in a case, such as the one at bar, where the interests of the voucher and vouchee are distinct and hostile.

The notice given in such cases is not for the purpose of establishing a ground of action, but rather to estop the other party from saying that the defendant in the first action was not bound to pay the money. (*Drennan* v. *Bunn*, 124 Ill. 175, 189.) In the case of *Chicago and Northwestern Railroad Co.* v. *Northern Line Packet Co.* 70 Ill. 217, a shipper delivered goods to the appellant railroad, consigned to himself, and the appellant delivered the goods to the appellee packet company, which delivered them to a second railroad for further transportation. The goods were lost, the

shipper recovered a judgment against the appellant in an action in which the appellee was given due notice to appear and defend. We held that in a subsequent action by the appellant against the appellee, the appelle was concluded from denying that the goods were lost, that the judgment was recovered against the appellant and that the judgment was for the value of the goods, and at page 220 we added: "but it is believed that no case can be found which holds that such a notice is so far conclusive of the question of such privity as to render the person served with notice liable. It is only conclusive on such privies as are liable over, and then only to the extent we have just indicated. Whether such a relation exists as to make the notice an estoppel, to that extent, is an open question that may always be contested; but when it is shown that the relation does exist, and that a recovery over may be had against the person on whom the notice was served, then he is estopped to deny that the judgment was recovered against his privy, that the wrong was perpetrated, or that the recovery was too large. In such a case, the judgment may be read in evidence to show that there had been a recovery against the person first sued, and the amount he has been compelled to pay, as fixing the measure of damages, but the judgment is evidence for no other purpose. Whether appellee was liable over to appellant, was not in issue in the first suit, and it would be manifestly unjust to conclude it on that question without being heard. It would violate the principle, that all persons must be afforded the opportunity of being heard before they can be deprived of life, liberty or property. This is fundamental and axiomatic, and must be regarded in all legal proceedings."

The case at bar involves a special statutory liability over. While there is a certain desirable simplicity in comparing the statutory liability of the city to public liability insurance, (cf. *Gaca* v. *City of Chicago*, 411 Ill. 146,) or in likening it to an indemnity bond, we must not be misled by termi-

nology and reduce the judicial process to epithetical jurisprudence. The conditions of the liability over in the case at bar are clearly set forth in the statute. They are not identical to the conditions of liability over contained in the typical public liability policy, or in the usual indemnity bond. The conditions of the statute antecedent to liability are: (1) there must be an injury caused by a policeman; (2) the policeman must have been engaged in the performance of his duties as a policeman when the injury was inflicted; and (3) the injury must not have resulted from the wilful misconduct of the policeman. The presence of wilful misconduct, or the fact that the policeman was not engaged in his duties as a policeman when the injury occurred, both destroy the liability over of the city.

The first Karas judgment is conclusive on the city insofar as it shows that the judgment creditor had a cause of action; that he was not guilty of contributory negligence; that there were no other defenses to the action; and that Snell was liable to Karas in the amount of the judgment. (30 Am. Jur., Judgments, sec. 243.) However, it does not determine that Snell was in the performance of his duties as a policeman at the time he injured Karas, or that Snell was not then and there guilty of wilful misconduct. Such determinations were not necessary to the adjudication in the first Karas case. The dramshop count of the complaint in the first Karas case was dismissed by stipulation, and the allegations of wilful misconduct were stricken prior to judgment on motion of Snell. If the original action of Karas had sounded in negligence alone, a finding of negligence would not, *ipso facto,* exclude the possibility of wilful misconduct. The ruling of the trial court in granting defendant's motion to strike the allegations of wilful misconduct can have no greater effect.

We turn next to the question of whether, upon this record, Snell was engaged in the performance of his duties

as a policeman when he injured Karas. It is clear that this question was in no way determined by the suit between Snell and Karas, since liability in that case was in no way affected by whether Snell was, or was not, in the course of his duties as policeman when he injured Karas. Snell and Karas contend on this appeal that the uncontradicted facts established by the affidavits filed with the motion for summary judgment determine as a matter of law that Snell was acting as a police officer. They refer to the police regulation providing that a police officer in the city of Chicago is "always on duty"; that Snell intended to and did arrest Karas; that he called a police patrol and had Karas incarcerated upon orders as a policeman.

Rule 373 of the Rules and Regulations of the Police Department of the city of Chicago, upon which Karas and Snell rely, provides: "A member of the department, for disciplinary purposes, shall be considered as being on duty at all times. Although certain hours are allotted to a respective member for the performance of duty on ordinary occasions, yet he is required to respond immediately, day or night, in any emergency, on notice that his services are needed." We think it clear that this rule merely provides that a policeman, for disciplinary purposes, is always on duty, and that regardless of the hour, day or night, he is subject to call when his services are needed. For disciplinary purposes he may well be subject to the surveillance of the police authorities at all times, and obliged to conduct himself in a manner befitting an officer of the law. However, he cannot be deemed to be "on duty" at all hours of the day or night according to the city rules. (*Harrison v. Civil Service Com.* 1 Ill.2d 137; *Burns v. City of New York*, 141 N.Y.S.2d 279.) Snell's tour of duty, on the day in question, was from 9:00 A.M. to 5:00 P.M., and he left the police station at 5:30 P.M. dressed in citizen's clothes, had several drinks and ate on his own time. He

injured and blinded Karas at about 11 P.M. in the Seven Seas Restaurant. It is inconceivable that Rule 373 can, *ipso facto,* make every action of a policeman, no matter how felonious or depraved, a "performance of his duties as policeman." Our conclusion is sustained by the holding in *Burns* v. *City of New York,* 141 N.Y.S.2d 279, at page 284:

"Considering the nature of the policeman's job and his obligations and those of the department of which he is a member as can be gleaned from the pertinent regulations of the department, it is expected by the employer that he is to be fit always and armed at all times subject to respond to any call to discharge their prescribed obligations. That means that when he is performing an assigned tour of duty and also when on his own and off-time, to enforce the law and preserve the peace.

"It follows in logic that to fasten liability on the city the action of the policeman must have been in 'line of duty' in order to be brought within the 'scope of employment.' Patently, that is not the same thing as saying that any and all members of the police force are on duty twenty-four hours a day, as plaintiff's counsel argued on summation; that all members of the force are authorized and permitted, unrestrained, without supervision, to function as vigilantes seeking out for whatever purpose whimsical though it may be, for acclaim or advancement, without prior evidence or even on suspicion of the likelihood of any and all kinds of violation of the criminal statutes. The implications of such uncontrolled police activities in the City of New York by members of a force of over twenty thousand men, ungeneralled and undisciplined as they would be, are beyond comprehension. The potential anarchy rebuts the contention. The answer is self-evident. It could not be tolerated."

We believe that the condition of section 1—15, that the injury must be caused, "while the member is engaged in

the performance of his duties as a policeman" is a factual determination which must, in every case, be made in the light of the peculiar circumstances involved.

In his affidavit for summary judgment, Snell averred that at the time of the injury Karas created a disturbance and used loud and boisterous language and behaved in a threatening manner, brandishing a bottle; that in his opinion as a police officer, Karas was guilty of disorderly conduct under the applicable provisions of the Illinois Criminal Code or the ordinances of the city of Chicago; that he informed Karas that he, Snell, was taking him to the police station; that it was his intention to arrest Karas. He further set up in his affidavit that he was charged before the Civil Service Commission with violating the criminal law on that occasion in that, without cause or provocation but with malice aforethought, he did fire a deadly weapon at and toward one William Karas, and did wilfully maltreat Karas and unlawfully use a weapon upon him. He further averred that the charges against him were dismissed. The city filed a counteraffidavit which alleged that Snell was not on duty as a policeman at the time Karas was injured and that he was then guilty of wilful misconduct. Attached to this affidavit was the transcript of the record in the first Karas case. It would serve no useful purpose and would unduly lengthen this opinion to analyze all of that testimony. It will suffice to say that there is ample evidence in that transcript tending to show that Snell had been drinking from the time he quit duty until the time he entered the Seven Seas Restaurant at 11 :00 P.M., a period of approximately six hours; that he was then intoxicated and used obscene language; that he argued with Karas and attacked him without provocation; and that as Karas was attempting to avoid him, Snell pulled a gun and, while attempting to strike Karas with it, shot and blinded him.

The testimony in the transcript clearly presents a ques-

tion of fact as to whether Snell was then engaged in the performance of his duties as a policeman, and as to whether the injury was caused by Snell's wilful misconduct. Snell and Karas contend that the evidence in the transcript on the prior trial could not be considered on the motion for summary judgment since it is not in the form of an affidavit made for the purposes of this case. However, they neither offered objection nor filed a motion in the trial court to strike the transcript, and we need not decide whether they might have availed themselves of this argument had they so done. On the motion for summary judgment, the trial court should not have been blind to the voluminous testimony in the certified transcript of record; it was competent and relevant evidence. The question of whether or not Snell was engaged in the performance of his duties as a policeman at the time he injured Karas is, upon this record, a question of fact upon which the city has a right to a trial.

Snell and Karas further argue as to the conclusive effect of the dismissal of charges by the Civil Service Commission. We cannot attribute any general conclusive effect to this determination. (*Mississippi River Fuel Corp.* v. *Illinois Commerce Com.* 1 Ill.2d 509.) We may grant that the determination of the Civil Service Commission is conclusive as to Snell's right to salary and continued employment with its attendant benefits. (*Secaur* v. *Civil Service Com.* 408 Ill. 197; *City of Chicago* v. *Campbell,* 118 Ill. App. 129.) We further concede that Snell may recover under the provisions of section 1—15 if the statute is applicable under the facts of this case. However, Snell is entitled to the benefits of indemnity only if he meets the statutory conditions prerequisite to recovery.

We conclude that the questions of Snell's wilful misconduct and whether or not he was engaged in the performance of his duties as a policeman at the time when he injured Karas are factual questions which ought not to have been disposed of on the motion for summary judgment. We

therefore must reverse the judgments entered herein and remand this cause with instructions to deny the motion for summary judgment, and for further proceedings upon the merits of the case consistent herewith.

*Reversed and remanded, with directions.*

MR. JUSTICE BRISTOW, dissenting.