THE STATE OF DELAWARE, for the use of The Building Commission for the William M. Henry Comprehensive High School for the use of M. A. Hartnett, Inc., a corporation of the State of Delaware, Plaintiff, v. JAMES H. WOOD and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation of the State of Maryland, Defendants.

THE STATE OF DELAWARE, for the use of the Board of Trustees of Delaware State College for the use of M. A. HARTNETT, INC., a corporation of the State of Delaware, Plaintiff, v. JAMES H. WOOD and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation of the State of Maryland, Defendants.

THE STATE OF DELAWARE, for the use of Smyrna Special School District Building Commission for the use of M. A. Hartnett, Inc., a corporation of the State of Delaware, Plaintiff, v. JAMES H. WOOD and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendants.

THE STATE OF DELAWARE, for the use of Dover Special School District Building Commission for the use of M. A. Hartnett, Inc., a corporation of the State of Delaware, Plaintiff, v. JAMES H. WOOD and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendants.

(*July* 21, 1961.)

LYNCH, J., sitting.

*Henry R. Horsey* (of Berl, Potter and Anderson) for M. A. Hartnett, Inc., the Use Plaintiff.

*Albert W. James* (of Morris, James, Hitchens and Williams) for defendant, Fidelity and Deposit Company of Maryland.

Superior Court for Kent County, Nos. 281 and 286, Civil Actions, 1960, and Nos. 51 and 52, Civil Actions, 1961.

LYNCH, J.:

The use plaintiff, M. A. Hartnett, Inc. (hereafter referred to as Hartnett), has filed these four suits seeking to recover payment for supplies and materials it allegedly furnished to defendant, James H. Wood (hereafter referred to as Wood), the general contractor on four public projects. Because public projects are involved, Wood was required by 29 *Del. C.*, Ch. 69, § 6902 to furnish a bond, with corporate surety, "conditioned that the contractor shall * * * pay to every person furnishing material and performing labor * * * all sums of money due * * *." The cited statute authorizes materialmen and sub-contractors to "maintain an action on the bond * * * for the recovery of * * * money * * * due * * * from the contractor." The actions were based on the statute.

Wood and Fidelity and Deposit Company of Maryland (hereafter referred to as surety), his corporate surety on the statutory bond, were made the only defendants.

Wood apparently has not seen fit to defend these actions, since he made no appearance and he has filed no answers to the complaints. Default judgments have been entered against Wood in two of the suits and it seems obvious that Hartnett is looking primarily to the surety for payment of the materials and supplies Hartnett allegedly furnished to Wood.

The surety's answer has attached to it a copy of the bond sued upon and a copy of an Indemnity Agreement, made September 7, 1949 between James H. Wood, a defendant in the suits, named as "Contractor" therein, and Hildreth D. Wood and Roberta A. Wood, named as "Indemnitors". This Indemnity Agreement provided that the contractor and the indemnitors—

"* * * will * * * indemnify and save the Company harmless from any and all loss, claim, demand, liability and expenses * * * which it shall at any time sustain, incur, or be put to, for, by reason, or in consequence of 'Such Bonds', which have been or may hereafter be executed or procured

on behalf of the Contractor, including all costs, counsel fees and expenses incurred in investigating any claims made under or concerning 'Such Bonds', or in collecting any premiums due or losses sustained on 'Such Bonds', or in or about prosecuting or defending any actions, suits, or other proceedings which may be commenced or prosecuted against the Contractor, or against the Company, upon 'Such Bonds', or in any wise relating thereto; we the Contractor (and the Indemnitors, if any), further agreeing, that in any accounting which may be had between the Company and the Contractor, or between the Company and the Indemnitors, or either or both of them, the Company shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement of Indemnity, under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Company shall be *prima facie* evidence of the fact and amount of our liability to the Company."

The answer set up certain defenses to Hartnett's claims, none of which are here pertinent. It asserted cross claims as to its co-defendant Wood and the named indemnitors. The surety company has moved under Rule 13(h) of the Rules of this Court, *Del. C. Ann.*, for an order—

"making the aforesaid Hildreth D. Wood and Roberta A. Wood defendants to the cross-claim asserted in this Surety Company's Answer, on the ground that their presence is required for the granting of complete relief in the determination of such cross-claim * * * and that jurisdiction can be obtained of them and that their joinder will not deprive the Court of jurisdiction of the action."

Hartnett opposes this motion, asking (1) that the request of the Surety Company to bring the indemnitors in as addi-

tional parties be denied and (2) moving to dismiss the cross claims asserted against them. The plaintiff has set up these grounds in support of the motions:

1. Plaintiff is not a party to the Indemnity Agreement;

2. Plaintiff's suits are based on Title 29, *Del. C.*, § 6902, and the bond furnished by defendants pursuant to the statute;

3. (a) The cross claims are unrelated to plaintiff's statutory action, since it is an independent action for contribution by the surety based on the Indemnity Agreement;

(b) The cross claim presents no common question of law or fact, common to plaintiff's claims;

(c) The cross claim is not compulsory but permissive and defendant may proceed on it in an independent action; defendant surety is not entitled to plead its cross claim in this action as against the defendant Wood;[1]

(d) Joinder of the cross claims with the complaint is contrary to the intent of 29 *Del. C.*, § 6902;

(e) The cross claims may not be tried without the presence of further parties; and

(f) Plaintiff will be prejudiced by allowance of the cross claims and the addition of further parties, inasmuch as (1) the cross claims raise issues foreign to the original action, complicating discovery, preparation for trial and trial of the case, and (2) the cross claims will delay the trial of plaintiff's claim and confuse the jury.

The statement is made in 33 *Columbia Law Review*, page 1147—

---

[1]This ground seems to be without substance and will not be considered in light of Hartnett's specific prayer to deny the surety's request to make the indemnitors additional parties to the actions and to dismiss the surety's cross claims against them.

"Familiar to most lawyers is the gospel that a plaintiff can choose his adversary. * * *."

This frequently puts a defendant in a bad position if he has a reason to look to another for relief against the claims. Changes in the procedural law, starting with the original Field Code, *N. Y. Laws*, 1848, Ch. 379, § 109, and continuing up to the adoption of the Federal Rules of Civil Procedure, have brought some relief to a harrassed defendant. These changes have been carried forward in the Rules of this Court.

Rule 13(h) of the Rules of this Court empowers the Court to bring in, as additional parties, persons whose presence—"is required for the granting of complete relief in the determination of a counterclaim or cross-claim, * * *."

Rule 13(g) provides that a—

"pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or occurrence, that is the subject matter either of the original action or of a counterclaim therein, or relating to any property that is the subject matter of the original action. * * *."

Barron and Holtzoff, *Federal Practice and Procedure*, Vol. 1 A, p. 567, § 394, states that the words in the phrase "arises out of same transaction or occurrence", appearing in Rule 13, are not used in any narrow or restricted sense; the authors, however, recognize that these words in the phrase "do not operate, * * *," if "an entirely different and independent transaction or occurrence" other than the claim asserted by the plaintiff, is involved.

It appears from a consideration of the Rule in this cited section of Barron & Holtzoff that the Rule is only applicable as between opposing parties—§ 398( *Id.*) to the action unless a question is presented of a counterclaim or the cross claim is against a co-party,—one sued with the defend-

ant asserting the cross claim, and the "cross claim procedure" is used as "between defendants sued together" as affording "means of determining the entire controversy".

The authors specifically point out—§ 397—(*Id.*) at p. 604 "Rule 13(g) does not permit a cross claim by one who is not a party to the action" and I believe that the converse would follow and that the Rule does not permit a cross claim against one who is not named as a defendant by the plaintiff at the time the suit is instituted.

As has been noted "a plaintiff can choose his adversary" and when he does the stage is set as to the conditions under which a defendant can assert a cross claim; necessarily it must be against a defendant named by the plaintiff at the time the suit is brought.

The relief sought by the Surety in these cases is not in the nature of a counterclaim; the assertion of the cross claims against the indemnitors in surety's answer is clearly without legal basis in these actions because the indemnitors were not made co-parties with the contractor and the surety in the suits as filed by Hartnett, as the use plaintiff. Only Wood and the surety were made defendants. Hartnett might have sued the indemnitors with the surety, *Markham v. Duke Land & Improvement Co.*, 1931, 201 *N. C.* 117, 158 *S. E.* 852, 854, and recovered judgment against both but did not do so.

Professor Moore, Vol. 3, page 91, *Federal Practice*, notes that "Rule 13(g) is a liberalized extension of practice [of filing cross claims] heretofore permitted in equity"; he also notes that "the claim must be by one party against a co-party". He further points out, Vol. 3, page 101, that Rule 13 "should not be confused with impleader which is governed by Rule 14."

The indemnitors may be liable to the surety company for all or part of the plaintiff's claim against the defendant

surety company. In such a situation Rule 14 is clearly applicable, but Rule 13(h) cannot be used by the surety for this purpose.

Our Court of Chancery has ruled in *Ross v. Freeman*, 1935, 21 *Del. Ch.* 44, 61-62, 180 *A.* 527, 535-536 and in *Security Trust Co. v. Cooling*, 1942, 26 *Del. Ch.* 368, 374, 28 *A.* 2d 687, 689, that matters set up in a cross bill must be relevant and germane to the matters alleged in the original suit, and if the cross bill introduces elements of controversy which are new to the plaintiff's claim such cross claim cannot be sustained.

As has been pointed out, Hartnett did not make the indemnitors parties to its suit and since the surety's claim against the indemnitors is premised upon the indemnity agreement, allegedly made many years prior to the execution of the statutory bond on which Hartnett bottoms its claim, it is new and it cannot be said that the surety's cross claim arises out of the same transaction or occurrence as the Hartnett claim, or that the matters asserted in the cross claim are relevant or germane to the claims asserted by Hartnett, so for this reason plaintiff's motion to strike surety's cross claim must be sustained.

The surety's motion to bring the indemnitors in as "parties defendant" seems to be an attempt to make them liable directly to the plaintiff. Compare *Hoskins v. Hotel Randolph Co.*, 1926, 203 *Iowa* 1152, 211 *N. W.* 423, 427, 65 *A. L. R.* 1125. See comment 12 *Iowa L. R.* 122. On the authority of the cited case I have no doubt but that Hartnett might have joined the indemnitors initially, but it did not choose to do so. Rule 13(h) is, therefore, not in point since it is confined to counterclaims or cross claims as between co-parties named in the suit as filed,—situations which are not present here. Surety's motion, based on Rule 13(h), to bring its indemnitors in as additional parties defendant is, therefore, denied.

Surety may, however, move under Rule 14 to make its indemnitors third party defendants and I know of no reason which Hartnett can advance to convince this Court that Rule 14 would not be appropriate,—this notwithstanding the several reasons cited by Hartnett and appearing at page 329, *supra*. Hartnett seemingly would have the Court ignore well established principles of Indemnity Law and the now thoroughly recognized use of the device of "vouching in" and modern third party practice.

It is well established that a surety may bind his indemnitors by the surety's "vouching in" the indemnitors and giving adequate notice of the pendency of the suit brought against the surety, thereby making them *prima facie* liable for a judgment against the surety, and under modern third party practice, as evidenced by Rule 14, the surety here can make its Indemnitors liable over by making them third party defendants. See *U. S. Wire & Cable Corp. v. Ascher Corporation*, 1961, 34 *N. J.* 121, 126, 167 *A.* 2d 633, 636 and compare *Schnell v. Peter Eckrich & Sons, Inc.*, 1961, 365 *U. S.* 260, 81 *S. Ct.* 557, 5 *L. Ed.* 2d 546.

"Vouching in" is a procedural device with roots deep in the common law. The device originally developed in the law of property. Landowner A would sell his property to Purchaser B, and would include a warranty of title in the deed. If C brought suit against B attacking his title to the property, B could then give notice to A to undertake the defense of the suit. If A failed to defend the suit and B lost, B could then sue A alleging breach of the warranty of title. In this second suit, the Court would not permit A to question C's right to the property. The judgment in the prior action would be considered conclusive on this question.

Courts have also allowed the use of the procedural device where A had given B a warranty of title to chattels. See *Lowrance Buick Company v. Mullinax*, 1955, 91 *Ga. App.* 865, 87 *S. E.* 2d 412. And likewise where A had either agreed

to indemnify B against an action by C or was obliged to do so by law, B could "vouch in" A into an action by C against B. See *Karas v. Snell*, 1957, 11 *Ill.* 2d 233, 142 *N. E.* 2d 46. Common law made a similar device available to B where A had warranted the quality of goods or their fitness for a particular use. See *Liberty Mut. Ins. Co. v. J. R. Clark Co.*, 1953, 239 *Minn.* 511, 59 *N. W.* 2d 899, 904.

This common law procedural device is discussed in 3 Moore, *Federal Practice*, Sec. 14.02; *Restatement*, Judgments, Sec. 107 and 108; 50 *C. J. S.* Judgments § 811, pp. 360 to 363; 30 A *Am. Jur.*—Judgments—§§ 415-426, pp. 470-479; Cohen, *Impleader*: Enforcement of Defendants' Rights Against Third Parties, 33 *Colum. L. Rev.* 1147 (1933); Bennett, Bringing in Third Parties by the Defendant, 19 *Minn. L. Rev.* 163 (1931).

Third party practice under Federal Rule 14, 28 U. S. C. A., grew out of this common law device and it is now a part of our practice under Rule 14 of the Rules of the Superior Court.

Third party practice is in many ways more satisfactory than "vouching in" procedure under the common law. But the new procedure was intended to supplement the old procedure and not to supplant it. 3 Moore, *Federal Practice*, § 14.02 at page 408. Third party practice had the general purpose of preventing inconsistent verdicts based on similar evidence in two trials upon identical issues. 3 Moore, *Federal Practice*, Sec. 14.04.

█ Where personal jurisdiction can be obtained over the third party, the modern third party practice is obviously "more adequate", but where personal service cannot be obtained the device of "vouching in" still may be and is utilized to lay the basis for fixing an indemnitor's liability to the surety on the claim for which surety was sued. See *U. S. Wire & Cable Corp. v. Ascher Corporation* and *Schnell v. Peter Eckrich & Sons, Inc., supra.*

The United States Supreme Court in the case of *Washington Gas Light Co. v. District of Columbia*, 1896, 161 *U. S.* 316, 330, 16 *S. Ct.* 564, 569, 40 *L. Ed.* 712, 719, quoting from *Littleton v. Richardson*, 1856, 34 *N. H.* 179, 187, stated the rule, which has been uniformly followed, in these words:

"When a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit, and requested to take upon him the defense of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim as if he were the real and nominal party upon the record. In every such case, *if due notice is given to such person*, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he has appeared or not." (Emphasis supplied.)

Cases which employ this language and follow this doctrine are legion. They may be found in the citations appearing on page 331.

The "vouching in" principle, of course, is not conclusive as to the indemnitors if they have defenses peculiar to themselves, and they may litigate such defenses, whether or not the principle is applicable or even under third party practice. A fairly recent case setting forth the rule is *Karas v. Snell*, 1957, 11 *Ill.* 2d 233, 142 *N. E.* 2d 46, 54, where the Court said:

"* * * the prior case is conclusive only of matters necessarily included in the adjudication, and is not conclusive of the question of whether the person served with notice is in such relation to defendant as to be bound. (Cases cited). A logical statement of the purpose of the rule is contained in *Southern R. Co. v. Acme Fast Freight, Inc.*, 193 *Ga.* 598, 19 *S. E.* 2d 286, at pages 287 and 288, 140 *A. L. R.* 1118 where

the court said: 'The underlying purpose of the rule which permits the vouching of another into court to defend a suit, where the defendant claims that the vouchee would in turn be responsible to him for any recovery had, is to conclude the vouchee upon the question of the voucher's liability to the original plaintiff and the amount of such liability; thus leaving for future determination only the one other question as to whether or not the vouchee is in fact liable over to the vouching defendant * * *. The burden is still on the voucher to establish by aliunde proof his remedy over the vouchee, in order to avail himself of the vouchee's inability to deny that the voucher was liable as adjudged in the original suit.' "

The foregoing discussion demonstrates how and when a surety may "vouch in" its indemnitors or make them third party defendants.

It goes without saying that Hartnett cannot and will not be prejudiced thereby because the Court can, under Rule 42(b), order separate trials and assuredly will dispose of the issues between Hartnett and the surety first before taking up and considering any liability over of the indemnitors to the surety by reason of the Indemnity Agreement.

The surety may, by invoking Rule 14, implead its indemnitors as third party defendants, as well as vouching them in and tendering defense of the case to them. The situation presented is a classic example of that contemplated by Rule 14 where the third party is or may be liable to the original defendant for all or part of such judgment as may be obtained by the plaintiff against the original defendant. *United States v. United States Fidelity & Guaranty Co., D. C. Minn.* 1940, 1 *F. R. D.* 112, and *American Surety Co. v. Morton, D. C. Ill.* 1958, 22 *F. R. D.* 261, involved sureties and their indemnitors and are squarely in point. The proposition is supported also by the many cases holding that in various situations an indemnitor may be impleaded, cited at 1A Barron & Holtzoff, *Federal Practice and Procedure,* § 426 n. 48 (Wright Ed.,

1960), and the somewhat analogous cases allowing a tort defendant to implead his liability insurer. *Id*. at §426.2. See also 3 Moore, *Federal Practice* (2d Ed.) ¶¶ 14.08 and 14.10, and *United States, for Use and Benefit of Jones Contracting Co. v. Skilken, D. C.*, 53 *F. Supp.* 14, 18, 20 and *Psaty & Fuhrman, Inc. v. Continental Casualty Co.*, 278 *App. Div.* 159, 103 *N. Y. S.* 2d 849, decided under § 193-a of the New York Civil Practice Act.

Order on Notice.