**Tommy J. TALENT, Petitioner,**

v.

**CITY OF ABILENE et al., Respondents.**

No. B–4267.

Supreme Court of Texas.

April 24, 1974.

Rehearing Denied May 22, 1974.

Robinson & Wilson, James E. Robinson, Abilene, for petitioner.

Robert D. Cheatham, City Atty., Abilene, for respondents.

McGEE, Justice.

Petitioner Talent brought suit against the City of Abilene and its Firemen's and Policemen's Civil Service Commission in the 42nd District Court of Taylor County, Texas, under the provisions of Article 1269m, § 18[1] to set aside the order of the Firemen's and Policemen's Civil Service Commission of the City of Abilene which permanently dismissed Petitioner. The trial court upheld the Commission's order; that judgment has been affirmed. Talent v. City of Abilene, 499 S.W.2d 724 (Tex. Civ.App.—Eastland 1973). We reverse the judgments of the courts below and render judgment for Petitioner.

Petitioner Talent will be herein referred to as Talent; the Civil Service Commission will be referred to as the Commission.

The Commission's order of dismissal stemmed from Talent's refusal, after having previously answered all questions put to him, to take an ordered polygraph test to inquire about the circumstances by which Talent was charged with receiving and concealing a stolen pickup truck. The record does not disclose that Talent was ever indicted or convicted of the crime. That order was as follows:

"Special Order. September 21, 1972. To: Tommy J. Talent, Senior Fireman. From: D. C. Musick, Fire Chief. You are hereby directed to accompany me to the Texas Department of Public Safety, Midland, Texas, Friday, September 22, 1972, for the purpose of undergoing a polygraph examination, a lie detector test. We will depart from #1 Fire Station at 9:00 a. m.

"The purpose of this examination is to ascertain if you have been truthful in your statements to me regarding your

1. All statutory rferences are to Vernon's Tex.Rev.Civ.Stat.Ann. (1963).

possession of a stolen pickup. This examination will in no way pry into your personal or private life. Only the circumstances of the stolen pickup being in your possession will be discussed.

"The following questions will be asked of you during this examination:

"1. Do you know who you got your pickup from?

2. Did you know the pickup was stolen?

3. Did you suspect the pickup being stolen?

4. Did you steal the pickup?

5. Did anybody ever indicate to you that the pickup was stolen?

6. Did you get any papers with the pickup?

7. Do you have any papers for the pickup?

8. Did you give a draft for $2,700 for the pickup?

9. Did you give $500 for the pickup?

10. Have you been truthful in your statements concerning the stolen pickup?

"You are hereby advised that no criminal charges or prosecution will result from this examination. D. C. Musick, Fire Chief."

The record discloses that Talent became aware through his relation to a used car dealership that a number of stolen cars were being sold in the vicinity. Talent requested the police department to inspect a pickup truck he had recently acquired to determine if it were stolen. An inspection indicated that the truck had been stolen, and the police recovered it from Talent. Talent then notified his chief that the police had found the truck to have been stolen. Talent was later arrested and charged with receiving and possessing stolen property. Talent and Chief Musick discussed the charges on at least two occasions. Chief Musick and Bill Olson, the city personnel director, went to Talent, and in Chief Musick's words, "[W]e told him that we wouldn't like for a man to be working for the City or in the Fire Department, rather, being under the charge, being charged with a felony, and asked him if he would be willing to take off, a leave of absence without pay, until it was cleared up." Talent refused that request, then acceded to a suggestion to use his vacation leave. When Talent's vacation leave was used up, Chief Musick ordered the polygraph test. Musick stated at trial, ". . . he ha[d]n't done anything to get it cleared up after his vacation. And the responsibility of the job, and so forth, it was my belief that Tommy shouldn't come back to work at full pay, I mean; on the Department, under charge, as a felony."

A Firemen's and Policemen's Civil Service Commission is required by Article 1269m, Section 5 to provide grounds for removal of firemen and policemen. Any rule or regulation so prescribed is invalid unless it states one or more of the grounds stated, as enumerated:

"Conviction of a felony or other crime involving moral turpitude; violations of the provisions of the charter of said city; acts of incompetency; neglect of duty; discourtesy by said employee to the public or to fellow employees while said employee is in line of duty; acts of said employees showing a lack of good moral character; drinking of intoxicants while on duty, or intoxication while off duty; or whose conduct was prejudicial to good order; refusal or neglect to pay just debts; absence without leave; shirking duty, or cowardice at fires; violation of any of the rules and regulations of the Fire Department or Police Department or of special orders, as applicable."

Section 16a of Article 1269m discloses that the purpose of the Article is to secure "efficient Police and Fire departments,

composed of capable personnel, free from political influence, *and with permanent tenure of employment as public servants."* [Emphasis added].

Pursuant to its statutory duty the Abilene Commission promulgated Section 23 of its Civil Service Rules containing the following grounds for suspension or dismissal, *inter alia:*

"(1) Indictment or conviction of a felony or any other crime involving moral turpitude.

\*   \*   \*   \*   \*   \*

"(8) Conduct prejudicial to good order.

\*   \*   \*   \*   \*   \*

"(13) Violation of any rule or regulation of the Civil Service Commission, Fire Department or Police Department or of special orders, as applicable."

Section 23 of the Abilene rules concludes:

"In cases where, in the interest of public policy, it becomes necessary to suspend a Fireman or Policeman who has been indicted by a grand jury, the employee so involved shall be requested to file an appeal with the Civil Service Commission pending the final outcome of the charges."

In compliance with Section 29 of the Civil Service Rules, the Chief filed a written statement with the Commission setting out the grounds for the indefinite suspension. Section 29 provides, *inter alia:*

"The written statement . . . to be filed by the department head with the Commission shall not only point out the civil service rule alleged to have been violated by the suspended employee, but shall contain the alleged acts of the employee which the department head contends are in violation of the civil service rules. It shall not be sufficient for the department head merely to refer to the provisions of the rules alleged to have been violated and in case the department head does not specifically point out the act or acts complained of on the part of such employee, it shall be the duty of the Commission promptly to reinstate him. In any civil service hearing hereunder, the department head is hereby restricted to his original written statement and charges, which shall not be amended, and no act or acts may be complained of by said department head which did not happen or occur within six (6) months immediately preceding the date of suspension by the department head. No employee shall be suspended or dismissed by the Commission except for violation of the civil service rules, and except upon a finding by the Commission of the truth of the specified charges against such employee."

The basis for Talent's dismissal was laid solely on his refusal to take the polygraph test. The written statement to the Commission from Chief Musick alleged violations of grounds numbers 8 (conduct prejudicial to good order) and 13 (violation of a rule, regulation, or special order) of Section 23 of the Civil Service Rules. The Chief's narrative of the events constituting violation of those rules clearly indicates violation of the special order to be the basis for the suspension. Chief Musick wrote:

"Honorable Civil Service Commission
City of Abilene
Abilene, Texas.

"Re: Indefinite suspension of Tommy J. Talent, Senior Fireman.

"Gentlemen:

"Please be advised that Senior Fireman Tommy J. Talent of the Abilene Fire Department was ordered indefinitely suspended by me September 26, 1972, at 10:00 o'clock a. m. Senior Fireman Talent was suspended and is recommended to be permanently dismissed from the Abilene Fire Department for violating

the following Civil Service Rules and Regulations of the City of Abilene:

"Section 23, (8)—CAUSES FOR REMOVAL OR SUSPENSION—For conduct prejudicial to good order.

"Section 23, (13)—CAUSES FOR REMOVAL OR SUSPENSION—For violation of any rule or regulation of the Civil Service Commission or Fire Department or of special orders, as applicable.

"Senior Fireman Talent was arrested by Abilene police August 30, 1972, on a felony warrant from Erath County, Texas charging him with receiving stolen property, a 1972 pickup. He was released on $1,000.00 bond August 30, 1972. Since the date of his arrest, Senior Fireman Talent has not returned to active duty in the Fire Department. He has been on vacation leave with pay until the time I ordered his indefinite suspension.

"When I first learned of the arrest of Senior Fireman Talent, I met with him and asked him to tell me the full story of how he came in possession of the stolen vehicle. He told me he did not steal the pickup and did not know it was stolen until the police officers told him it was stolen. He stated he bought the pickup here in Abilene about three months before his arrest from a man from Weatherford, Texas, that he did not know and that he could not remember the man's name. Senior Fireman Talent told me he gave the man $500.00 in cash and a draft for $2,700.00 for the pickup. He stated he did not get a receipt or any papers on the vehicle from the man from Weatherford and that he has not seen or heard from him since.

"Due to the nature of the criminal charge filed against Senior Fireman Talent, and based on the fact that he is employed in a public safety profession and charged with the responsibility of protecting the lives and the property of the citizens of Abilene, I issued a written special order to Senior Fireman Talent directing him to undergo a polygraph examination to verify his statements to me regarding his possession of the stolen pickup. When Senior Fireman Talent was handed this special order September 21, 1972, he stated he did not think he would take the examination. He then failed to report to the #1 Fire Station at 9:00 a. m. on September 22, 1972, as directed by the special order. Assistant Fire Chief G. I. Powell waited at the #1 Fire Station until after 9:30 a. m. to take Senior Fireman Talent to the examination but Chief Powell did not see or hear from him.

"Senior Fireman Talent's action in this matter is in direct violation of the above cited rules. Senior Fireman Talent failed to obey the written special order of the Fire Chief to undergo a polygraph examination and such failure to obey the written special order of the Fire Chief is prejudicial to the good order of the Fire Department.

"You will find attached hereto my special order of September 21, 1972 to Senior Fireman Talent.

"A copy of this order of suspension will be served on Senior Fireman Talent by me and Senior Fireman Talent is hereby informed and advised that he has ten (10) days after receipt of his copy within which to file a written appeal with the Firemen's and Policemen's Civil Service Commission of the City of Abilene, Texas, at the office of the Director of Civil Service in Room 210, City Hall, 555 Walnut Street, Abilene, Texas.

"Yours very truly, D. C. Musick, Fire Chief."

On both direct and cross examination Chief Musick stated that both violations dealt with the single incident of refusal to comply with the order to take the polygraph test. On cross examination Chief Musick further stated in effect his position

had been that Talent would not have been allowed to return to his post unless he took the test *and* the test results had been favorable to Talent.

Petitioner has challenged the validity of the order on successive grounds. First, he argues that a fire chief is without legal authority to order a lie detector inquiry into the criminal activity of a fireman when the charged crime does not relate to the fireman's performance of his official duties or to his accounting for his public trust. Second, he argues that even if a fire chief has such authority, the special order authority may not be used to circumvent the statutory requirement of *conviction* of a crime or the civil service rules requirement of *indictment or conviction* of a crime. Third, Talent argues the order unreasonable in that it asks about conduct functionally unrelated to a fireman's duties. Fourth, Talent argues the order was illegal on the grounds that since the officer who ordered Talent to answer questions lacked statutory authority to grant immunity, the order would have compelled him to give admissible testimony against himself. Because we are convinced Talent is correct in his first argument, we reverse the judgments below without reaching Talent's other points.

Neither the briefs of counsel, nor briefs of Amici Curiae, nor our own research have disclosed any express authority granting a fire chief the power to compel those under his supervision to undergo lie detector investigation of their character after employment. Further, we hold that under the circumstances of this case, the fire chief exceeded his implied authority in ordering the polygraph test.

The question is not before us and we do not decide whether a *law enforcement* official has implied authority to order polygraph tests be taken by his or her subordinates concerning subject matters related to performance of their public trusts. A fire chief is not a law enforcement official and has no roving commission to detect crime or to enforce the criminal law. He has no

indictment power. His subordinates, although they may have extraordinary access to the property of others, are not employed as law enforcement officers. We do not mean to be understood as forbidding the use of polygraph tests by public officials when there is cause to believe a public employee has performed his official duties illegally. We do hold, however, that a fire chief has no authority to order such a test of a tenured employee about non-employment related subjects. In Jackson v. Firemen's & Policemen's Civil Service Commission, 466 S.W.2d 412 (Tex.Civ.App.— Houston [1st Dist.] 1971, writ ref'd n. r. e.) a dismissal was upheld for violation of a special order pursuant to a city-wide policy that all city employees live within the city limits. It could be there presumed that living within the city limits was reasonably related to maintaining an efficient fire fighting force because of the expectations of greater proximity to one's reporting station and of ease of communication. No such presumption can here be indulged. It was said by way of limitation of special orders in *Jackson*, "It would be an unreasonable interpretation to hold that suspension is authorized for the violation of a special order if it is clearly unreasonable or unrelated to the duties of a fireman. Such an interpretation would render meaningless the enumeration of grounds for suspension found in Section 5 of the Act." *Id.* at 414.

We have carefully examined those cases cited by the Court of Civil Appeals and relied on by the Commission which uphold dismissals of policemen in situations involving refusals to take lie detector tests, or which raise constitutional objections to tests by seeking declaratory judgment. Because each of those cases involves charged dereliction of official duties or the intentional damage to public property while off duty, they are factually distinguishable from the instant case and are not dispositive of this fact situation.

The judgment of the Court of Civil Appeals is reversed and hereby rendered that

Petitioner be reinstated as a Senior Fireman with the Abilene Fire Department effective the twenty-sixth day of September, 1972, at 10:00 o'clock a. m.

Dissenting opinion by REAVLEY, J., joined by WALKER, STEAKLEY and DANIEL, JJ.

REAVLEY, Justce dissenting.

I agree with the concurring opinion of Chief Justice McCloud of the Court of Civil Appeals; the judgment of that Court should be affirmed.

The police found a stolen 1972 pickup truck in the possession of Fireman Talent, who then went to Fire Chief Musick to explain how he came to have the truck. It was the first word the Fire Chief received of the matter. Fireman Talent's explanation was enough to leave doubts. He said that he bought the truck by giving $500 cash and a $2700 draft to be cashed later to someone he did not know and could not name. He had no receipt, no title papers, and no address or means of obtaining further proof or papers. This is the account of a 28 year old man, a fireman for over 6 years, who has spent time at his father's used car lot and owned several vehicles previously.

Fireman Talent was arrested and charged with receiving stolen property. Fire Chief Musick then tried to obtain from Talent a better explanation of his involvement. Instead he found Talent's response to be unconvincing and inconsistent.

The Fire Chief had a responsibility to Fireman Talent: to respect the rules of job tenure and to treat Talent fairly. He also had a responsibility to the other 127 people in his department where discipline and mutual trust are necessary. He had the people of the City of Abilene to serve. Abilene's ordinances provide that its firemen and policemen must be persons of good moral character. The Civil Service Rules and Regulations of Abilene include as a cause for removal or suspension: "Acts or conduct of an employee showing a lack of good moral character." The reasons for removal are not limited to conduct while on duty; they include intoxication while off duty, refusal or neglect to pay just debts, as well as the aforementioned lack of good moral character. These same grounds are included in Section 5, Article 1269m, Vernon's Ann.Civ.St.

By providing these grounds for discharge, I would say that the Legislature and City of Abilene recognized that policemen and firemen should be credible and trustworthy. It is not enough to say that a fireman has never taken off a firehose; if he is a dishonest person, the City of Abilene does not want him staying at the fire station or coming into their homes and stores. This is their right, and in my opinion Fireman Talent's rights must accede thereto.

Fire Chief Musick sought to meet these responsibilities and resolve his doubts by ordering Talent to answer certain questions under the observation of an experienced polygraph examiner. The Fire Chief had resolved similar problems on five prior occasions; those five people had all passed their examinations satisfactorily and had been retained in employment. Fireman Talent refused to obey the order and was discharged.

The order was justified if the inquiry was a proper one. This Court now holds "that a fire chief has no authority to order such a test of a tenured employee about non-employment related subjects." As I understand the distinction by the majority of Jackson v. Firemen's & Policemen's Civil Service Commission, 466 S.W.2d 412 (Tex.Civ.App.1971, writ ref'd n. r. e.), it is that the fireman's place of residence is related to the efficiency of the fire fighting force, but that the honesty of the fireman is not. It appears, further, that the majority would hold differently if the honesty of a policeman were the inquiry. I regard the holding to be contrary to the statute (Art. 1269m) and without any justification.

WALKER, STEAKLEY and DANIEL, JJ., join in this dissent.