James McLEAN, Plaintiff,

v.

James M. ROCHFORD, Individually and as Superintendent of Chicago Police Department, et al., Defendants.

No. 75 C 955.

United States District Court, N. D. Illinois, E. D.

Sept. 17, 1975.

Melvyn L. Segal, Chicago, Ill., for plaintiff.

Michael S. Small, Asst. Corporation Counsel, Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Plaintiff, James McLean, a Chicago Police Officer, filed this civil rights action against the Superintendent and First Deputy Superintendent of the Chicago Police Department, the Chicago Police Board and one of its Hearing Officers, an Assistant Corporation Counsel of the City of Chicago and various command officers of the Chicago Police Department, alleging that certain disciplinary actions taken against him by the Department and the Board violated his rights to due process of law and equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States, and his privilege against self-incrimination guaranteed by the Fifth Amendment. He asserts that a 30-day suspension from duty imposed upon him by the Department on December 18, 1974 was done without a prior hearing, contrary to the due process clause, was based upon his exercise of his privilege against self-incrimination, and upon two Department rules which he alleges are overly broad, and unconstitutional on their face and as applied to him. He also asserts that a subsequent suspension through July 7, 1975 imposed upon him by the Board was based upon his prior exercise of his privilege against self-incrimination and upon the allegedly invalid departmental rules. Finally, he asserts, in respect to both suspensions, that he was "singled out . . . for selective prosecution and suspension in violation of the . . . Fourteenth Amendment to the Constitution of the United States [in] that the . . . Department has taken no action against Officers of Command Rank when allegations of wrongdoing have been charged." Complaint ¶ 32. He seeks a declaratory judgment that the challenged Department rules are unconstitutional on their face and as applied to him, injunctive relief ordering his reinstatement with full pay, and purging his personnel record of the proceedings brought against him, additional compensatory damages in the amount of $50,000 and punitive damages of $250,000. The action is here under 42 U.S.C. § 1983, 28 U.S.C. § 1343(3), 28 U.S.C. § 1331 and 28 U.S.C. § 2201 *et seq.* Plaintiff has moved for partial summary judgment. Rule 56, Fed.R. Civ.P. Defendants have moved to dismiss for failure to state a claim upon which relief can be granted (Rule 12(b), Fed.R.Civ.P.) and for summary judgment. Since materials outside the complaint have been submitted and considered in ruling on the motions, they will be treated as made under Rule 56. *Stickler Industrial Supply Corp. v. Blaw-Knox Co.*, 367 F.2d 744 (7th Cir. 1966).

The complaint, affidavits filed in support of the motions and stenographic transcripts of the proceedings which culminated in plaintiff's suspensions disclosed the following facts. Prior to December 18, 1974 plaintiff was a patrol officer of the Chicago Police Department. On December 18, 1974 he was called before the Office of Professional Standards of the Department to answer questions in connection with "an official investigation under CR [i. e., Complaint Register] No. 77131, regarding an incident that occurred in the Travelodge Motel, on the corner of Foster and Sheridan Road on Saturday evening and Sunday morning, December 14 and 15, 1974." Tr. 12/18/74, p. 1. The parties agree that the specific subject of the investigation was an alleged rape of a 17-year-old girl by a number of Chicago police officers.

Present at the meeting were defendant James Casey, the Administrator of the Office of Professional Standards, defendant Joseph DiLeonardi, Commander of the Homicide and Sex Section of the Department, defendant Richard Brzeczek, Executive Assistant to the Superintendent of Police, Assistant State's Attorneys Gillis and Claps, plaintiff's counsel, plaintiff and a court reporter. Casey conducted the questioning. However, before it began, Casey informed plaintiff of the subject of the investigation and that nothing which he said in the course of the interrogation would be used in any disciplinary proceeding seeking his suspension or separation from the Department. Assistant State's Attorney Gillis then advised him that anything he said in the course of the interrogation could not be used against him in any criminal proceeding.[1]

Casey then proceeded to question McLean with the following results. McLean stated that he was assigned to the 20th District and had been for 15 months. He was working on the evening of December 14, 1974 on the third watch. He was assigned to Beat 2032 and his partner was Robert Froberg. Froberg was the regular beat man; plaintiff was the relief man. The other regular beat man on 2032 was Curtis Dotson.

Plaintiff then refused to answer the following specific questions upon the grounds that his answers might tend to incriminate him:

1/—Does Curtis Dotson have any nicknames that you are aware of?

2/—While you were working Beat 2032, did you receive any messages from Curtis Dotson on the evening of December 14 while you were in your squad car?

3/—Did you receive any messages while you were on duty on the night of December 14th, from Curtis Dotson?

4/—Upon return to the 20th District, at the close of your tour of duty, did you, in fact, receive a message from Curtis Dotson?

5/—Upon completion of your tour of duty, did you receive any messages from Curtis Dotson?

6/—Officer, upon completion of your tour of duty, did you, in the early morning of 15 December 1974 go to the Travel Lodge Motel at Foster and Sheridan Road in Chicago, enter Room 177 and engage in sexual activity with a 17 year old girl by the name of Rhonda Volsted?

---

1. The precise import of Gillis' advice is not clear from the transcript. He may have meant that the State's Attorney's Office was prepared to seek judicial immunity for plaintiff pursuant to Ill.Rev.Stat., ch. 38, art. 106 (1973), or he may have meant that the immunity would arise by operation of law if plaintiff answered the questions under threat of discharge should he refuse to answer. See Confederation of Police v. Conlisk, 489 F.2d 891, n., 4 (7th Cir. 1973), cert. denied sub nom. Rochford v. Confederation of Police, 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974); Garrity v. New Jersey, 385 U. S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

7/—In prefacing the next question, officer, as I am sure you are aware as a sworn police officer of the City of Chicago, you have a duty to report any misconduct or violations of any Rules and Regulations or any law by any Chicago Policeman. Did you, in the early morning hours of 15 December 1974, in Room 177 of the Travel Lodge Motel, observe any Chicago Police officer, in uniform or on duty, engage in any sexual activity with a 17 year old female known as Rhonda Volsted, and I further tell you that this question is specifically, narrowly and directly related to your duty as a Chicago Police Officer?
Tr. 12/18/74, pp. 4–8

Following each refusal by plaintiff, Commander DiLeonardi addressed a specific oral order to him to answer. Thus, in respect to whether Curtis Dotson had a nickname, he stated to plaintiff, "I issue an oral order to give a statement relative to Curtis Dotson being known by any other nicknames." Tr. 12/18/74, p. 5. Each order was keyed to the specific pending question.

Following plaintiff's refusal to answer the inquiry regarding whether he had observed Chicago police officers in uniform or on duty engage in sexual activity at the Travelodge Motel, plaintiff and his counsel were excused from the interrogation room. An unreported conference evidently occurred among those remaining in the room. Plaintiff and his counsel were then brought back into the interrogation room. Casey repeated the earlier assurances that statements made by plaintiff would not be used "in any manner to affect your status in the Chicago Police Department, that it will not be used against you in any disciplinary proceedings, that you have been given departmental immunity [and] you are further advised by State's Attorney Gillis that any statement you give in this room cannot be used against you in any legal proceedings." Tr. 12/18/74, p. 9.

Casey then stated:

It is my position of the Office of Professional Standards, as an Administrator, being a staff arm of the Superintendent, that this interrogation is no longer inquisitive, that we are now, we now consider you to be in direct violation of Departmental Rule 6, which I will read to you: "Disobedience of an order or directive, whether written or oral." The law provides that you be advised in writing as to the improper or illegal acts. Accordingly, you are hereby advised that the following acts have been attributed to you: Violation of Rule 6, observing that you were ordered by Commander DiLeonardi to answer questions specifically, narrowly and directly related to your duties as a sworn police officer. The law further provides that any admissions that you may make in the course of this hearing, interrogation or examination may be used as the basis for charges seeking your removal or discharge. You have the right to counsel of your own choosing to be present and to advise you at this hearing. You have the right to confer with him. Do you wish to consult with him further?

(Tr. 12/18/74, pp. 9–10.)

Plaintiff's counsel stated, "He has consulted with me." (Id. p. 10)

At that point a written charge was served upon plaintiff which read, "Violation of Rule 6, Failure to obey an order of Commander DiLeonardi to answer questions specifically, directly and narrowly related to your duties as a sworn police officer." Department Exh. 2. Plaintiff declined to sign the document so as to acknowledge its receipt, but the transcript of December 18, 1974 leaves no doubt that he, in fact, received it.

Casey then reput the question whether plaintiff "during the early morning hours of 15 December 1974, [observed] any Chicago Police Officer, either in uniform or on duty, engage in any sexual activity with a 17 year old girl in the Travel Lodge Motel, at Foster and

Sheridan, Room 177?" *Id.* p. 11. Plaintiff refused to answer; Commander DiLeonardi ordered him to do so; plaintiff persisted in his refusal. At that point the proceedings were terminated.

Later on that same day, plaintiff was ordered suspended for a period of 30 days by Superintendent of Police Rochford. The notice of suspension stated that it was because plaintiff "violated certain rules of the Department." It went on to state, "In addition thereto, charges will be filed with the Police Board seeking a separation of the above cited member, or such other punishment as be determined by the Board, beyond that already administered by the Superintendent under his authority." The notice was signed by the Superintendent and countersigned by defendant Casey. Exh. A to plaintiff's complaint.

On January 7, 1975 charges were brought before the Chicago Police Board against plaintiff by Deputy Superintendent Spiotto (presumably in the absence of Superintendent Rochford). Exh. B. to plaintiff's complaint. The charges alleged that plaintiff had violated Rules 2 and 6 of the Department which provide respectively:

> Any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department.

> Disobedience of an order or directive, whether written or oral.

In respect to Rule 2 it was alleged that "on December 18, 1974, he did refuse to answer questions asked of him by duly authorized members of the Office of Professional Standards of the Chicago Police Department relative to serious allegations of official misconduct against members of the Department." *Id.* In respect to the Rule 6 violation, it was alleged that "on December 18, 1974, [he] did refuse to answer questions specifically, directly and narrowly relating to

the performance of his official duties and asked of him by duly authorized members of the Office of Professional Standards of the Chicago Police Department." *Id.*

These charges were originally scheduled for hearing before the Police Board on January 17, 1975. The hearing was continued until February 6, 1975 without any apparent objection by the plaintiff, perhaps at his request. On February 6 a hearing was held before defendant Heneghan. Plaintiff was present, represented by counsel. The evidence consisted entirely of the transcript of the interrogation of December 18, 1974.

On March 14, 1975 the Police Board found plaintiff guilty of the charges of violating Rules 2 and 6 and ordered him suspended for a period of six months from January 7, 1975 to July 7, 1975.[2] This action followed.

■ Plaintiff, as a police officer, was entitled to the protections of procedural due process of law in respect to both suspensions. *Goss v. Lopez,* 419 U.S. 565, 573, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (Powell, J., concurring), 171 (White, J. concurring and dissenting) (1974); *Muscare v. Quinn,* 520 F.2d 1212 (7th Cir. 1975, *reh'g denied* Jun. 17, 1975, No. 74–1460); *see, Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). He challenges his first suspension upon the grounds that he was not accorded due process of law. He does not make a similar challenge to the second suspension.

■■ At a minimum, due process requires notice and a hearing appropriate to the nature of the case. *Goss v. Lopez, supra,* 419 U.S. at 579, 95 S.Ct. 729. By statute and city ordinance, a Chicago police officer cannot be suspended for cause for more than 30 days until after a hearing has been conducted before the

---

2. Thus, the two periods of suspension overlap: the first running from December 18, 1974 to January 17, 1975 and the second from January 7, 1975 to July 7, 1975.

Police Board. This hearing contemplates that the officer be accorded a full panoply of procedural rights. Illinois Municipal Code, Ill.Rev.Stat., ch. 24, § 10–1–18.1 (1973); Municipal Code of Chicago, ch. 11, § 11–3 (1974). The Superintendent of Police has the power to suspend without a prior hearing before the Police Board for periods of 30 days or less. And the Illinois Supreme Court has held that if an officer is suspended by the Superintendent for 30 days or less, he may appeal the suspension to the Police Board for review. If the suspension is not sustained, the Board must enter an order placing the officer in the same position he would have been but for the suspension. *Kropel v. Conlisk,* 60 Ill.2d 17, 322 N.E.2d 793 (1975).

In *Muscare v. Quinn, supra,* the Court of Appeals for this Circuit went beyond the Illinois Supreme Court's ruling in *Kropel. Muscare,* a fireman with the Chicago Fire Department, was suspended without pay for 29 days for wearing a goatee in violation of Department Rules regulating personal appearance. After being warned that he would not be permitted to continue to work as a fireman unless he shaved off the goatee, charges were filed against him with the administrative authorities. Nothing happened for two and one-half months. Then several of his supervisors appeared at his duty station and peremptorily suspended him. Muscare sued contending that he could not constitutionally be suspended without an opportunity to respond to the charges made against him. The defendant urged that due process was satisfied since he had actual notice of the charges against him and a statutory right to a post-suspension hearing before the Civil Service Commission which he failed to exercise.[3] Relying on *Goss v. Lopez, supra,* the Court of Appeals held:

Public employees facing temporary suspension for less than 30 days have

interests qualifying for protection under the Due Process Clause, and due process requires at the minimum that they be granted a hearing prior to suspension where they may be fully informed of the reasons for the proposed suspension and where they may challenge their sufficiency. Whether such persons should be granted the full panoply of rights envisioned in Ill.Rev.Stat., ch. 24, § 10–1–18, for suspensions greater than 30 days is a question which we need not now address, since no hearing of any kind was accorded appellant prior to his suspension. P. 1215

■ The short answer to plaintiff's contention is that on December 18, 1974 he received a hearing which accorded all that the Due Process Clause of the Fourteenth Amendment guarantees him in the context here under consideration. He was brought in for questioning in connection with a departmental investigation of unquestionable significance to the Department. He was represented by counsel. On advice of his counsel he refused to answer questions clearly relevant to the subject matter of the investigation. He was ordered to answer those questions by his Commander. He persisted in his refusal. He was then served with a written charge that he had violated a Department Rule by failing to obey the order of his Commander. Still represented by counsel, he was afforded the opportunity to comply with the order or explain his reason for not doing so. He merely persisted in his refusal. Thereupon, he was suspended for 30 days.

■ Due process is intensely practical. It does not contemplate inflexible procedures universally applicable to every situation. *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *see, Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct.

---

3. The review procedures available to Chicago firemen are equivalent to that now required for police officers. *Compare,* Ill.Rev.Stat., ch. 24, § 10–1–18 (1973) with Ill.Rev.Stat., ch. 24, § 10–1–18.1 (1973), and *Kropel v. Conlisk, supra.*

780, 28 L.Ed.2d 113 (1971). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Board of Regents v. Roth*, 408 U.S. 564, 570 n. 8, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

While the proceedings were swift, they were sure and fair. There could have been no doubt in the mind of plaintiff or his counsel that he had been charged with disobedience of an order and the reasons for that charge. Even then, he was granted the opportunity to purge himself of his recalcitrance and cooperate with the investigation. He declined to do so. He was accorded due process of law.

█ Plaintiff next asserts that even if he was afforded procedural due process, both suspensions were imposed because he exercised his privilege against self-incrimination. If such were the case, the suspensions would violate plaintiff's rights under the Fifth and Fourteenth Amendments. *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L. Ed.2d 574 (1967); *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L. Ed.2d 1082 (1968); *Uniformed Sanitation Men v. Commissioner of Sanitation of the City of New York*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Lefkowitz v. Turley*, 414 U.S. 70, 94 S. Ct. 316, 38 L.Ed.2d 274 (1973). The facts of this case reveal, however, that plaintiff was dismissed not because he exercised his privilege against self-incrimination, but because he refused to answer questions narrowly and specifically related to his duties as a police of-

ficer after being advised that nothing he said could be used against him in either a departmental disciplinary proceeding or a criminal proceeding.

In *Confederation of Police v. Conlisk*, 489 F.2d 891 (7th Cir. 1973), *cert. denied* sub nom. *Rochford v. Confederation of Police*, 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974), the Court of Appeals held that a Chicago police officer could be discharged for refusing to answer "specific questions relating to the employee's official duties and [the employee is advised] of the consequences of his choice, i. e., that failure to answer will result in dismissal, but that answers he gives and fruits thereof cannot be used against him in criminal proceedings." In the present case the plaintiff was advised repeatedly that nothing he said would be used against him in either a departmental disciplinary or criminal proceeding. The questions were narrowly and specifically drawn, related to his duties[4] as a police officer and were clearly relevant to the subject matter of the investigation. When plaintiff refused to answer he was told that he was charged and served with written charges of violating Rule 6 of the Department. Although he was not specifically told that his failure to answer would result in suspension, the clear import of the charge of violating Rule 6 was a possible suspension or worse. Furthermore, after the charge was made, he was afforded the opportunity to answer.

Plaintiff was properly suspended for failure to answer questions relating to his duties as a police officer and not because he invoked his privilege against self-incrimination. *See Lefkowitz v. Turley, supra,* at 84–85, 94 S.Ct. 316.[5]

---

4. Plaintiff argues that since the alleged rape took place when he was off duty, the Department could not interrogate him about the incident since the scope of any inquiry must be limited to periods in which he was on duty. The argument is not supported by Illinois law which is controlling on the issue. A police officer has an official duty to report criminal conduct if he is technically off duty. *See Karras v. Snell*, 11 Ill.2d 233,

251–52, 142 N.E.2d 46, 56–57 (1957); *Banks v. City of Chicago*, 11 Ill.App.3d 543, 549–50, 297 N.E.2d 343 (1st Dist. 1973); Chicago Police Department Rule 298, as authorized by Ill.Rev.Stat., ch. 24, § 11–1–2 (1973).

5. Plaintiff asserts that the State's Attorney could not grant immunity from prosecution and that even if he could, it would not be

The third question raised by the pending motions and the allegations of plaintiff's complaint is his assertion that he was "singled out . . . for selective prosecution and suspension . . . ." Complaint, ¶ 32. Here plaintiff urges "that officers of command rank who have engaged in alleged wrongdoing have not been interrogated because the grants of immunity are not forthcoming or would not be broad enough. It seems that the position of defendants is that 'what's good for the goose is not good for the gander.'" The allegation and argument are, at best a polemic unsupported by any specific allegation.

In *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962), the Supreme Court held that, "conscious . . . selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcment, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged."

▉ In the context of a defense to a criminal prosecution, the defendant bears a heavy burden of establishing prima facie, "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of

constitutional rights. These two essential elements are sometimes referred to as 'intentional and purposeful discrimination.'" *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974); *United States v. Swanson,* 509 F.2d 1205, 1208 (8th Cir. 1975); *see, United States v. Falk,* 479 F.2d 616 (7th Cir. 1973). Although the above language referred to the defense of selective or discriminatory prosecution in criminal cases, the same standards should apply when plaintiff alleges in a civil rights action that disciplinary action has been taken against him as a result of selective discriminatory prosecution.

▉ The uncontroverted affidavit of Superintendent Rochford is to the effect that command officers have voluntarily answered questions and taken polygraph examinations with respct to organized corruption in their command and their own participation in criminal activity, organized corruption or organized criminal activity. Furthermore, plaintiff does not allege any facts that show that any discrimination was exercised against him when the Department suspended him. In short, plaintiff's invidious discrimination allegation is frivolous.

There remains the question of the validity of departmental Rules 2 and 6, which the plaintiff alleges are "unconstitutional on their face and as construed and applied in the instant case." Complaint, ¶ 29. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). These issues were not addressed by the parties in their cross-motions for summary judgment and no opinion is expressed on them.

In conclusion, the defendants' motion for summary judgment is granted in accord with the foregoing memorandum

---

coextensive with his Fifth Amendment privilege because he would still be subject to federal charges. *See* 18 U.S.C. §§ 242, 371. Both of the arguments are without merit. *See Confederation of Police v. Conlisk, supra,* at 895, n. 4; *Uniformed Sanitation Men Ass'n Inc. v. Commissioner of Sanitation of*

*the City of New York, et al.,* 426 F.2d 619, 627 (2d Cir. 1970), *cert. denied,* 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972); *Murphy v. Waterfront Commissioner,* 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

decision. The plaintiff's cross-motion for summary judgment is denied. The defendants are ordered to answer the remaining allegations in the plaintiff's complaint within 20 days, and the parties are ordered to appear for a report on status on October 8, 1975 at 10:00 a. m.