**FIREMEN'S AND POLICEMEN'S CIVIL SERVICE COMMISSION, CITY OF AUSTIN, Texas, Appellant,**

v.

**Robert BURNHAM, Appellee.**

**No. 14632.**

Court of Appeals of Texas, Austin.

Aug. 13, 1986.

Rehearing Denied Sept. 24, 1986.

Robert O. Smith, Salmanson, Smith, Deitch & Travis, Austin, for appellant.

Gary T. MacInnis, Austin, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

SHANNON, Chief Justice.

The Firemen's and Policemen's Civil Service Commission of the City of Austin appeals from a judgment of the district court of Travis County setting aside the order of the Commission dismissing appellee Robert Burnham from the Austin Police force. The Commission's order sustained Burnham's dismissal by the chief of police for refusal to submit to a polygraph examination concerning an alleged rape. This Court will reverse the judgment of the district court.

The facts underlying the dispute are not contested. In May of 1983 Burnham was a policeman for the City of Austin. In early May, 1983, the police department began an investigation of a rape complaint lodged against Burnham. The chief of police ordered Burnham to take a polygraph examination. When Burnham refused to do so the police chief fired him.

The district court determined that the incident, out of which the claimed rape arose, was not related to Burnham's employment as a policeman because the charge arose out of an off-duty incident which occurred while Burnham "was not in uniform." The district court concluded that the subject of the proposed polygraph examination "was not specifically, directly, and narrowly related to the performance of [Burnham's] official duties" as a policeman. The district court concluded further that the police chief's order requiring Burnham to take the polygraph examination was illegal as a violation of the Fifth and Fourteenth Amendments of the Constitution of the United States.

The question, then, is whether the claimed rape was related to Burnham's employment as a police officer. This Court concludes that it was related and, accordingly, the police chief was empowered to

order Burnham to submit to the polygraph examination.

██ One is, of course, protected from unwarranted intrusions into his private affairs. *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973). Nevertheless, the government as an employer has authority to question its employee concerning matters relevant to his employment. The government may dismiss or discipline an employee, after proper proceedings, if he refuses to account for the performance of his employment duties. If he is not coerced into waiving a constitutional right, there is no constitutional impediment to such dismissal or discipline. *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Uniformed Sanitation Men Assoc. v. Commissioner of Sanitation*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Lerner v. Casey*, 357 U.S. 468, 78 S.Ct. 1311, 2 L.Ed.2d 1423 (1958); *Slochower v. Board of Higher Education of the City of New York*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Garner v. Board of Pub. W. of Los Angeles*, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951); *Tex. Dept. of Mental Health and Mental Retardation v. Tex. State Employees Union*, 708 S.W.2d 498, (Tex.App.1986, writ pending). Incriminating information obtained from a compelled examination is inadmissible, of course, in a subsequent criminal prosecution. *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Gulden v. McCorkle*, 680 F.2d 1070 (5th Cir. 1982).

In *Talent v. City of Abilene*, 508 S.W.2d 592 (Tex.1974) the Supreme Court determined that the Abilene fire chief had no authority to order a tenured fireman to take a polygraph examination concerning non-employment related subjects. The Court, however, distinguished a law enforcement officer from a fireman, who "has no roving commission to detect crime or to enforce the criminal law." *Id.* at 596. The Court implied that the official duties of a police officer are far broader than those of a fireman.

In *McLean v. Rochford*, 404 F.Supp. 191 (N.D.Ill.1975), the United States district court affirmed the dismissal of a police officer for refusing to answer questions concerning his knowledge of and participation in a rape. The district court concluded that the questions did relate to the officer's official duties, and rejected the officer's argument that he could not be questioned about incidents which occurred while he was off duty. The court stated:

> The argument is not supported by the Illinois law which is controlling on the issue. A police officer has an official duty to report criminal conduct if he is technically off duty.

*Id.* at 198 n. 4 (Citations omitted).

██ Texas has similar laws providing that a police officer has official duties even when he is off duty. See Tex.Code Cr.P. Ann. arts. 2.13, 6.05, and 6.06 (1977 & Supp.1986). Article 6.06 provides:

> *Whenever*, in the presence of a peace officer, or within his view, one person is about to commit an offense against the person or property of another, ... it is his duty to prevent it ...

(Emphasis added.)

The Court of Criminal Appeals has written on several occasions that a police officer is on duty twenty-four hours a day. *Wood v. State*, 486 S.W.2d 771 (Tex.Cr.App.1972); *Monroe v. State*, 465 S.W.2d 757 (Tex.Cr.App.1971); *Simms v. State*, 167 Tex.Cr.R. 315, 319 S.W.2d 717 (1958). A police officer's off-duty status is not a limitation upon his discharge of police authority in the presence of criminal activity. *Morris v. State*, 523 S.W.2d 417 (Tex.Cr.App.1975).

██ Because a police officer has an obligation to prevent crime even when off duty, the district court erred in concluding that the alleged rape was not related to Burnham's employment with the Austin Police Department and that the subject of the polygraph examination was not specifically, directly, and narrowly related to the performance of Burnham's official duties as an Austin police officer. The polygraph examination, because it related to Burnham's official duties, did not violate any of

his constitutional rights, and the department was, therefore, within its authority in dismissing Burnham for refusing to obey a direct order to submit himself to the examination.

The judgment is reversed and the cause is remanded to the district court for entry of judgment sustaining the order of the Commission.

BRADY, Justice, dissenting.

I respectfully dissent.

In concluding that the alleged rape was related to Burnham's employment with the Austin Police Department, the majority relies on various authorities for the proposition that "a police officer has an obligation to prevent crime even when off duty" which do not apply to the fact situation in the case at bar.

In the cases cited from the Court of Criminal Appeals, criminal charges of assault on a police officer were made in conjunction with the officer's private "off duty" employment. In *Wood*, it was a criminal charge involving assault on an officer while directing traffic in a private corporation's parking lot. In *Monroe*, it was the same type of criminal charge involving a police officer's "off duty" employment in a night club. In these cases, the officers involved *were* in uniform, although not officially on duty. I agree that when a person puts on a police officer's uniform, whether he is officially "on duty", or working "off duty" in any private employment, such officer arguably could be subjected to disciplinary action for breach of that duty.

Here officer Burnham was not in uniform. He was off duty, in a private residence. He was not in a public place, but engaged in a matter not in any way connected with the performance of his employment duties, or in any manner related to his employment.

The provisions the majority cites from the Code of Criminal Procedure similarly are inapplicable in the present cause. These laws give off duty officers the authority to prevent unlawful conduct by others, but they should not be read as removing police officers' constitutional rights to privacy and against self-incrimination. Texas cases have held that these sections limit law enforcement authority to the particular officer's territorial jurisdiction. *Rozell v. State*, 662 S.W.2d 634 (Tex.App. 1983, pet.ref'd); *Vernon v. City of Dallas*, 638 S.W.2d 5 (Tex.App.1982, writ ref'd n.r. e.). Would the majority have concluded that the alleged rape was not related to Burnham's employment if it was reported to have occurred in Pflugerville?

In *McLean v. Rochford*, the federal decision relied on by the majority, the court was construing the Illinois statute as it related to an off duty police officer's obligation to report the criminal conduct of *others*. The incident being investigated was "an alleged rape of a 17–year-old girl by a number of Chicago police officers." 404 F.Supp. at 194. The officer was given departmental immunity as to his own involvement and "was advised repeatedly that nothing he said would be used against him in either a departmental disciplinary or criminal proceeding." *Id.* at 198. The statute provided that a City shall indemnify a police officer for any judgment recovered against him as a result of injury inflicted in the performance of his official duty. In *Karas v. Snell*, 11 Ill.2d 233, 142 N.E.2d 46, 57 (1957), a case relied on by the court in *McLean*, the court stated that while an officer is "obliged to conduct himself in a manner befitting an officer of the law ... [i]t is inconceivable that [the police department rule that an officer be considered as being on duty at all times] can, *ipso facto*, make every action of a policeman, no matter how felonious or depraved, a 'performance of his duties as a policeman.'" The court concluded that this was a factual determination to be made in each particular case.

Courts are divided on the question of whether a police officer can be dismissed for refusal to take a polygraph test. *See* Annot., 12 A.L.R. 4th 1207 (1982 & Supp. 1985). In *Farmer v. City of Ft. Lauder-*

*dale,* 427 So.2d 187 (Fla.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 74, 78 L.Ed.2d 86 (1983), the Florida Supreme Court held that a police officer was improperly discharged for refusing to take a polygraph exam during an investigation for theft of money from a bank he guarded. The court pointed out that the reliability of the polygraph has not been established in proving guilt, and that, by donning a uniform, a police officer does not give up all his constitutional rights. Note that in *Farmer,* the allegation clearly related to an on-the-job incident, and the court still disallowed the mandatory use of the polygraph. *See also Engel v. Township of Woodbridge,* 124 N.J.Super. 307, 306 A.2d 485 (1973) (court based its decision on a state statute providing that no person could be required to take polygraph as a condition of initial or continued employment); *Molino v. Board of Public Safety of the City of Torrington,* 154 Conn. 368, 225 A.2d 805 (1966) (*lack of* regulation authorizing test and basic unreliability of test combined to result in disallowance of its use); *Stape v. Civil Service Com.,* 404 Pa. 354, 172 A.2d 161 (1961) (officer could not be dismissed for "just cause" since nothing in any relevant regulations requiring him to take the test).

I agree with the trial court's findings and conclusions that the subject of the proposed polygraph examination "was not specifically, directly and narrowly related to the performance of (Burnham's) official duties" as a police officer and that the order of the police chief to take a lie detector test was illegal as a violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Further the majority bases its argument on the fact that "the government as an employer has authority to question its employee concerning matters *relevant to his employment.*" The majority continues, stating that "government may dismiss or discipline an employee, after proper proceedings, if he refuses to account for the performance of his *employment duties.*" (Emphasis added). I do not disagree with these statements of legal principle. However, I am not persuaded that officer Burn-

ham's activities, in a private situation and out of uniform, could be construed either as "matters relevant to his employment" or as being in the "performance of his employment duties." Whether one is a police officer or private citizen, each is entitled to the basic constitutional protection against self-incrimination. To condone the unbridled authority of a chief of police, or any other public official, to make the choice of self-incrimination or the loss of one's means of livelihood because of a refusal to take the polygraph test, in the view of this writer, flies in the face of the holding by the United States Supreme Court in *Garrity v. New Jersey,* 385 U.S. 493, 505, 87 S.Ct. 616, 622, 17 L.Ed.2d 562 (1967):

> The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent.

In *Gardner v. Broderick,* 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968), the Supreme Court held that dismissal of a police officer was proper only for failure to answer questions relating "specifically, directly, and narrowly to the performance of his official duties." By its application of the above-cited decisions and Texas statutes to the present cause, the majority reads out any meaning from this language as applied to police officers. Under the majority's holding, *every activity* of a police officer, whether on or off duty, relates to the performance of his official duties, and any requirement that an officer submit to questioning or a polygraph is permissible.

Briefly, the facts are these:

Officer Burnham was a seven year veteran of the Austin Police Department when on May 3, 1983, he was charged with rape by a former high school acquaintance. The officer had been seeing her over a period of time nearly a year before the reported rape. The victim stated that officer Burnham had raped her previously. Officer Burnham denied these allegations. After criminal charges had been filed, the officer was arrested. Thereafter, the Austin po-

lice chief ordered Burnham to submit to a polygraph examination. The chief of police told him that Burnham's refusal to submit to the polygraph tests would result in his indefinite suspension from the department. Burnham refused, upon advice of his defense counsel, and was suspended. The rape case was subsequently tried to a jury, which was unable to reach a verdict. Thereafter, all criminal charges were dismissed by the trial court on motion of the prosecuting attorney.

Fact findings by the trial court, *inter alia,* included evidence that documents prepared by the Internal Affairs Division of the Austin Police Department were found in the District Attorney's files. Testimony of the witnesses revealed that no privilege attaches to evidence obtained by the Internal Affairs Division, and confessions and results of polygraph examinations in past cases often have been referred to the prosecutor's office. Further, these records are subject to subpoena by the District Attorney. Thus, it appears likely that any information obtained by the polygraph examination of this police officer who was charged with a felony could be and would be used by the prosecutor in his trial. Such incriminating evidence, "or the fruits thereof," *id.,* whether admissible or not, could be used in his prosecution and trial by the State.

In *Talent v. City of Abilene,* 508 S.W.2d 592, 596 (Tex.1974), the Texas Supreme Court stated:

> The question is not before us and we do not decide whether a *law enforcement* official has implied authority to order polygraph tests be taken by his or her subordinates concerning subject matters related to the performance of their public trusts.

It well may be, as the majority states, that the Court in *Talent* has "implied that the official duties of a policeman are far broader than those of a fireman," but it is not for an intermediate appellate court to read into a decision of the high court that which is simply not there. I do not think we can say that the Chief of Police of the City of Austin has authority to fire a police officer for his refusal to submit to a lie detector test concerning a private matter, which occurred while out of uniform and which in my reading of the record did not involve any of Burnham's official duties with the department.

I would vote to affirm the judgment of the trial court setting aside the decision of the City of Austin Civil Service Commission, and reinstating officer Robert Burnham with back pay and attorney's fees.